**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL-CIO, Plaintiff**

v.

**William P. ROGERS and Joseph M. Swing, Defendants.**

**Civ. A. No. 3630-59.**

United States District Court District of Columbia.

July 7, 1960.

J. Albert Woll, Washington, D. C., C. J. Morris, Dallas, Tex., for plaintiff.

Oliver Gasch, U. S. Atty., Harold D. Rhynedance, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

YOUNGDAHL, Judge.

This is a suit by a labor organization to require the Attorney General and the Commissioner of Immigration to enforce § 212(a) (14) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(a) (14).[1]

---

1. "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

 \*  \*  \*  \*  \*

"(14) Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, if the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) sufficient workers in the United States who are able, willing, and qualified are available at the time (of application for a visa and for admission to the United States) and place (to which the alien is destined) to perform such skilled or unskilled labor, or (B) the employment of such aliens will adversely affect the wages and working conditions of the workers in the United States similarly employed. The

The defendants have moved to dismiss or, in the alternative, for summary judgment. The following facts are not in dispute.

In September, 1958, pursuant to § 9 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 159, as amended, the National Labor Relations Board designated plaintiff the collective bargaining representative for the employees of the Peyton Packing Company in El Paso, Texas. On March 2, 1959, a strike began (and is still in progress). On August 1, 1959, because plaintiff was of the opinion the striking employees had been replaced by aliens resident in Juarez, Mexico (which lies just over the border from El Paso), the plaintiff petitioned the Secretary of Labor to invoke § 212(a) (14) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(a) (14).

On October 20, 1959, the Secretary of Labor issued his certification, notifying the Attorney General the same day by letter as follows:

"Pursuant to the provisions of Section 212(a) (14) (B) of the Immigration and Nationality Act, 66 Stat. 183, 8 U.S.C. 1182(a) (14) (B), I hereby determine and certify that the admission of any aliens to the United States for employment at the Peyton Packing Company of El Paso, Texas during the strike presently in progress will adversely affect the wages and working conditions of workers in the United States similarly. employed."

Upon receipt of this information, the immigration officials immediately instructed all ports of entry within the El Paso District that:

"during the effectiveness of such certification no aliens applying for admission to the United States as immigrants, *except returning lawfully domiciled resident aliens*, destined to employment to the Peyton Packing Company, El Paso, Texas, could or would be admitted." (Emphasis supplied.)

■ Plaintiff contends that (1) by excepting aliens lawfully admitted for permanent residence,[2] the defendants unlawfully limited the Secretary of Labor's certification, and (2) even assuming that resident aliens are not embraced by § 212(a) (14)—and thus are unaffected by the Secretary of Labor's certification—none of the Mexicans now "commuting" each day from Juarez can be considered resident aliens.

The defendants, in addition to certain jurisdictional arguments, assert that the excepting of resident aliens is required by the statute and that commuters are within this exception.

■ The Court has carefully examined the defendants' contentions that the plaintiff lacks standing to bring this suit, that a justiciable case has not been presented, and that not all indispensable parties are before the Court, and the Court is of the opinion they must be rejected. Cf. Busby v. Electric Utilities Employees Union, 1944, 323 U.S. 72, 65 S.Ct. 142, 89 L.Ed. 78; McGrath v. Kristensen, 1950, 340 U.S. 162, 169, 71 S.Ct. 224, 95 L.Ed. 173; Mastrapasqua v. Shaughnessy, 2 Cir., 1950, 180 F.2d

exclusion of aliens under this paragraph shall apply only to the following classes: (i) those aliens described in the nonpreference category of section 1153(a) (4) of this title (ii) those aliens described in section 1101(a) (27) (C), (27) (D), or (27) (E) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence[)], unless their services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, specialized experience, or exceptional ability of such immigrants and to be substantially beneficial prospectively to the national economy, cultural interest or welfare of the United States."

2. This is more accurate—in statutory terms—than "returning lawfully domiciled resident aliens"; for purposes of brevity, the Court will also use the term "resident aliens" which should be read as "aliens lawfully admitted for permanent residence".

999; Commercial State Bank of Roseville v. Gidney, D.C.D.C.1959, 174 F. Supp. 770, 780–781, affirmed D.C.Cir., 278 F.2d 871.

The pertinent history of alien commuters begins with the Immigration Act of 1924, c. 190, 43 Stat. 153. Section 3 of that Act defined the term "immigrant" as "any alien departing from any place outside the United States destined for the United States." Several exceptions were then listed; one of these was "(2) an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure." Such an alien would be considered a nonimmigrant and thus be permitted to enter the country without having to satisfy the stricter qualifications for immigrants seeking to enter for permanent residence.

Until April 1, 1927, commuters were considered to fall within this exception (2) to § 3 and thus were considered nonimmigrants. On that date, the Immigration Service provided by its General Order 86 that thereafter commuters would be considered aliens of the immigrant class and not within § 3(2). Two commuters brought the question of the proper interpretation of § 3(2) to the Supreme Court—that is, the Court was presented with the question whether "business" included ordinary work for hire, and thus relieved commuters from satisfying the various qualifications demanded of entrant immigrants. The Court looked to the policy of the immigration legislation, concluded that "one of its great purposes was to protect American labor against the influx of foreign labor" and held unanimously that "business" did not include ordinary work for hire but rather was "limited in application to intercourse of a commercial character." Karnuth v. United States ex rel. Albro, 1929, 279 U.S. 231, 243, 244, 49 S.Ct. 274, 278, 73 L.Ed. 677. And see discussion in Matter of L, 4 I. & N. Dec. 454 (1951).

Accordingly, since 1927, commuters have been considered immigrants and,

the defendants go on to say, aliens lawfully admitted for permanent residence —Mexicans and Canadians with permanent employment in the United States, but who return each night to Mexico or Canada, have been given the status of aliens lawfully admitted for permanent residence in order to permit them to pursue their employment in the United States.

The principal question now presented to the Court is the effect, if any, a § 212 (a) (14) certification has on these commuters—a question of first impression.

Section 212(a) (14) expressly limits its applicability to the exclusion of the following classes of aliens only:

(i) those described in § 203(a) (4) of the Act, [8 U.S.C.A. § 1153 (a) (4)]; and,

(ii) those described in § 101(a) (27) (C), (27) (D), or (27) (E) of the Act, [8 U.S.C.A. § 1101(a) (27) (C), (27) (D), (27) (E)].

(An exception in these categories is made for the parents, spouses or children of United States citizens or of aliens lawfully admitted for permanent residence; an exception is also made for aliens with urgently needed skills, as determined by the Attorney General).

Category (i) is not applicable here as authorization for the exclusion of Mexican commuters since § 203(a) (4) deals with quota immigrants and Mexicans are nonquota immigrants. But category (ii), by referring to § 101(a) (27) (C), is composed, in part, of nonquota immigrants born in Mexico and thus Mexicans would appear excludable after a certification under § 212(a) (14).

The defendants argue, however, that Mexican commuters, having achieved the status of aliens lawfully admitted for permanent residence, are no longer within category (ii)—even though they would have been before achieving this status.

■ Aliens lawfully admitted for permanent residence are not expressly included in § 212(a) (14) although their

parents, spouses or children are expressly excepted. The statute speaks of the parents, spouses and children of resident aliens and does not cover the resident aliens themselves because the statute only permits exclusion, not deportation. Relatives of a resident alien are amenable to exclusion; the resident alien is not himself so amenable because once he departs from the United States, his status as a resident alien is lost. A subsequent re-entry can then be made only if he can comply with the various statutory provisions applicable to entrant aliens generally.[3] And the statute could not be employed against resident aliens physically within the United States because the statute does not authorize deportation. Thus, the Court concludes that aliens lawfully admitted for permanent residence are not embraced within § 212(a) (14).[4]

The further questions arise: are commuters aliens lawfully admitted for permanent residence? If not, can they be so treated administratively for the limited purpose of permitting their employment in the United States?

The term "lawfully admitted for permanent residence" is defined by § 101(a) (20) of the Act, 8 U.S.C.A. § 1101(a) (20) as:

"the status of having been lawfully accorded the privilege of *residing* permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." (Emphasis supplied.)

The term "residence" is defined by § 101(a) (33) of the Act, 8 U.S.C.A. § 1101(a) (33), as:

"the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent. * * *"

With these legislative statements as the guide, it is clear that Mexican commuters do not reside in the United States,[5] and that it therefore is not pos--

---

3. See, e. g., Bonetti v. Rogers, 1958, 356 U.S. 691, 698, 78 S.Ct. 976, 980, 2 L.Ed. 2d 1087:

"While a resident alien who leaves the country for any period, however brief, does make a new entry on his return, he is then subject nevertheless to all current exclusionary laws * * *".

There are two exceptions: an unintentional or involuntary departure by a resident alien. Thus, § 101(a) (13), 8 U.S.C.A. § 1101(a) (13), reads:

"The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception."

And the resident alien can protect himself by acquiring a re-entry permit before he departs. Section 223 of the 1952 Act, 8 U.S.C.A. § 1203.

4. Apparently none of the aliens involved here are resident aliens seeking entry after an unintentional or involuntary departure from the United States. Of course, as to such aliens the rationale in the text is not applicable because such aliens are resident aliens physically outside the United States. The reason not to apply the certification to these aliens would be the clear expression of Congress to disregard this unintentional or involuntary departure and put them in the same position as if they had not left. See note 3, supra.

5. The defendants, in their brief, adopt a footnote in an administrative decision, Matter of H–O–, 5 I. & N.Dec. 716, 719 n. 13 (1954), to the effect that "The fiction of a commuter's permanent United States residence coinciding with his place of employment was recognized judicially in Petition of Correa, 79 F.Supp. 265 ([D.C.] W.D.Tex., 1948)."

What is meant by "recognized judicially" is unclear. Correa held that a

sible for them to be aliens lawfully admitted for permanent residence. This should not mean, however, that Mexicans or Canadians cannot commute to work in the United States. The defendants can utilize the documentary requirements and administrative procedures they think best under the applicable law for aliens who work in this country and live in Mexico or Canada. If the defendants are satisfied that an alien can enter the United States to work here, they could then permit the alien to commute. But when the Secretary of Labor has issued a certification under § 212(a) (14) pertaining to particular employment, such an alien would be excludable. It is not sufficient to resort to an "amiable fiction"[6] to justify a wholesale evasion of the Secretary's certification—Mexican commuters destined for the employment covered by the certification must be excluded just as any other Mexican nonresident alien. To do otherwise would be to permit administrative practice to

make a shambles of a provision which, with § 101(a) (15) (H),[7] was newly designed by the 1952 Act in order to assure "strong safeguards for American labor." [8]

The defendants urge Matter of H–O, supra, note 5, upon the Court. The Board of Immigration Appeals there held that the Immigration and Nationality Act of 1952 did not require the exclusion of a Mexican commuter. Although the Board makes the broad statement that "the practice of considering commuters as permanent residents has not been disturbed by the act of 1952", the Board was not faced with the effect of a § 212(a) (14) certification upon the excludability of a commuter. Furthermore, stress is put upon the definition of "border crossing identification card" as given in § 101(a) (6), 8 U.S.C.A. § 1101 (a) (6),[9] but the Court does not believe this provision, defining a documentary term, makes a commuter a resident of the United States, when it is clear that

---

Mexican who worked in El Paso, and lived with his wife and children in Juarez for three or four nights a week, did not "reside" in the United States for purposes of naturalization. I am unable to find the slightest intimation in the opinion to show that Judge Thomason believed Correa was a resident of the United States for *any* purpose.

6. "Where this employment [of Canadians and Mexicans] is permanent in character administrative ingenuity has devised a 'commuter' status, which enables the Canadian or Mexican to obtain lawful admission for permanent residence in order that he may be able to pursue his employment here, and his right to enter each day is attested by his alien registration receipt card. Of course, this device is an amiable fiction * * *". Gordon & Rosenfield, "Immigration Law & Procedure" 127 (1959). The authors go on to say that "the practice has worked satisfactorily" but they are speaking in the context of procedural and administrative ease and make no judgment regarding the precise problem here at hand.

7. "(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

\*　　\*　　\*　　\*　　\*

"(H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform temporary services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country; or (iii) who is coming temporarily to the United States as an industrial trainee."

8. H.Rep. 1365, 82d Cong. 2d Sess., 50 (1952).

9. "The term 'border crossing identification card' means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations."

he is not, so as to permit his entry notwithstanding the certification of the Secretary of Labor.

The Court concludes, therefore, that "returning lawfully domiciled resident aliens" may enter the United States to work at the Peyton Packing Company, but that commuters are not within this class and should be excluded.

The defendants' motion is denied.

Counsel to submit order.