MATTER OF C—C—

In EXCLUSION Proceedings

A-12251617

*Decided by Board March 8, and August 2, 1961*

Inadmissibility—Section 212(a)(14)(B)—"Ineligible employer."

Secretary of Labor's certification under section 212(a)(14)(B) of 1952 Act that employment of aliens by persons on Secretary's list of ineligible employers will adversely affect wages and working conditions of similarly employed workers in the United States does not bar admissibility of Mexican national who subsequent to receipt of nonquota immigrant visa obtains new employer in place of employer on ineligible list to whom he was originally destined.

EXCLUDABLE: Act of 1952—Section 212(a)(14)(B) [8 U.S.C. 1182(a)(14)(B)]— Seeks to enter the United States for employment which would adversely affect wages and working conditions of workers in the United States similarly employed.

**BEFORE THE BOARD**
(March 8, 1961)

**DISCUSSION:** Appellant is 31 years old, married, male, a native and citizen of Mexico. He arrived at San Ysidro, California, on October 21, 1960, and sought admission for permanent residence. He presented a Mexican passport, valid to June 14, 1962, and a nonquota immigrant visa issued by the American Consul at Mexico City on October 10, 1960, valid to February 9, 1961. These documents have expired while these proceedings were pending, but it has been the administrative practice to consider that their validity continues until disposition of the appeal. The special inquiry officer ordered appellant excluded and deported from the United States and certified the case to this Board for review.

The special inquiry officer excluded appellant for the reason that his sponsor and prospective employer is F—H—, General Manager of Heringers Enterprises, Oroville, California. Heringers Enterprises appears on a list of "Employers Ineligible to Contract Mexican Nationals," dated September 1, 1960, transmitted to the Attorney General and the Visa Division of the Department of State from the Director of the Bureau of Employment Security, Depart-

387

ment of Labor. The Secretary of Labor on March 11, 1958, certified and determined "pursuant to the provisions of section 212(a)(14)(B) of the Immigration and Nationality Act [1] that the employment of any aliens by persons on the aforesaid list of ineligible employers . . . will adversely affect the wages and working conditions of the workers in the United States similarly employed." The employers on the list are declared to be ineligible to contract Mexican nationals because of violations of the Migrant Labor Agreement of 1951, as amended, or the Standard Work Contract, as amended.

Appellant testified that he is coming to the United States to perform agricultural work for Heringers Enterprises, and that his work would be primarily pruning peach trees. He was employed briefly by Mr. H— when he was in the United States as a "bracero." His affidavit of support and letter of employment are signed by Mr. H—. The question is whether the appellant is excludable under section 212(a)(14)(B) as a person seeking to enter the United States, because his prospective employer is a person who has been declared ineligible to contract on a temporary basis Mexican agricultural workers. The special inquiry officer stated that it appears "that employer is seeking to accomplish indirectly what he has been prevented from doing directly, namely, to obtain an agricultural worker from Mexico to perform the same work he previously did when in the United States as a 'bracero.' By arranging for the immigration for permanent residence of such a worker the employer is enabled to overcome the requirements of section 214 of the Immigration and Nationality Act pertaining to the admission of nonimmigrants and the specific provisions of 8 CFR 214.2(k) relating to Mexican agricultural workers."

We will not quote 8 CFR 214.2(k), cited by the special inquiry officer, because of its length, but it relates exclusively to "*nonimmigrant classes.*" It describes the conditions for admission of a *bona fide* nonimmigrant Mexican agricultural worker, including the fact that he must agree to abide by the conditions of employment and to depart upon the expiration of the period for which he was admitted. Regulations concerned with *nonimmigrant contract laborers* have no

---

[1] Section 212(a)(14)(B) provides: "Sec. 212. (a) Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * * (14) Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, if the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that * * * (B) the employment of such aliens will adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply only to the following classes: (i) those aliens described in the nonpreference category of section 203(a)(4), (ii) those aliens described in section 101(a)(27)(C) * * *."

application to an immigrant who presents himself at the border with the documents necessary for lawful admission for permanent residence.

The alien requests that he be given an opportunity to obtain another letter of employment and another affidavit of support. He states that it would be expensive and difficult for him to start over again to secure the necessary documents and that he is not to blame for the difficulty between H— and this Government.

We have sought vainly to find in the legislative history of the Act any legislative intent to use this provision to enforce against specific employer agreements relating to wages, hours and working agreements. This provision replaces the "contract labor" clause of section 3 of the Immigration Act of 1917. The Senate Committee Report No. 1137, 82d Cong., 2d Sess., which accompanied the 1952 Act, states, page 11, "Section 212(a)(14) provides for the exclusion of aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor if the Secretary of Labor has determined that there are sufficient available workers in the locality of the aliens' destination who are able, willing, and qualified to perform such skilled or unskilled labor and that the employment of such aliens will adversely affect the wages and working conditions of workers in the United States similarly employed. This provision is applicable to all aliens other than those whose services have been determined to be needed in the United States under certain other provisions of the bill or who are entitled to preferential treatment because of their relationship to United States citizens or aliens who have been lawfully admitted for permanent residence. It is the opinion of the committee that this provision will adequately provide for the protection of American labor against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor *where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country.*" (Emphasis supplied.) The House Committee Report No. 1365, February 14, 1952, contains a similar statement, page 51.[2] There is nothing else in the legislative history of the Act relating to the function of this provision.

The only decision concerning section 212(a)(14) is *Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO v. Rogers and Swing*, 186 F. Supp. 114 (D.C. D.C., 1960), wherein Judge Youngdahl distinguished between legally resident aliens and

---

[2] An earlier report of the Senate Committee on the Judiciary, Report No. 1515, 81st Cong., 2d Sess., April 20, 1950, discusses in greater detail the reasons for abandoning the contract labor clause of the 1917 Act, pp. 358–363, and states that "such aliens will not be admitted if unemployed persons in the United States capable of performing such services or labor are available," and indicates (p. 430) the desirability of importing "skilled agriculturists."

commuters, applying the sanction against the latter as strikebreakers, at the petition of the union. The decision is of no assistance in the instant case.

The argument that H— is seeking to accomplish indirectly what he has been prevented from doing directly does not justify creating an extra-legal sanction against the employer, or an unnecessary hardship for the immigrant. An alien worker in the United States legally is in a better position to protect himself from exploitation than a migrant worker in the United States illegally, or than a "bracero" who is contracted to the employer.[3]

The Board cannot make a final conclusion on this record that the application of section 212(a)(14)(B) of the Immigration and Nationality Act and of 8 CFR 214.2(k) to immigrants, as was done here, is beyond the scope of the Act. Neither the Immigration and Naturalization Service nor the Department of Labor has made sufficient representations regarding the practice. However, it is our opinion that the remedy for the abuse of the migrant worker does not lie in creating extreme hardship for the individual alien who seeks legal entry, and arrives at our port properly documented, except that he chose the wrong sponsor. He is under no contract, and his non-quota visa is unconditional.

It is the conclusion of the Board that the record should be reopened in order that the appellant may have an opportunity to attempt to secure a different employer and a new affidavit of support.

ORDER: It is ordered that the record be reopened for the purpose set forth above.

### BEFORE THE BOARD
### (August 2, 1961)

DISCUSSION: On the basis of the Board's decision of March 8, 1961, and the fact that the applicant has secured a different employer and a new affidavit of support, the special inquiry officer, reversing an earlier decision, ordered applicant admitted to the United States for permanent residence and certified the case to this Board for review. The District Director at Los Angeles recommends that the decision of the special inquiry officer be set aside and that the applicant be excluded from the United States as an immigrant not in possession of a valid immigrant visa. The District Director's recommendation is based on a documentary ground only.

On March 8, 1961, the Board considered this record, the applicable statutes and regulations. Applicant's affidavit of support and letter

---

[3] Portions of the testimony before the President's Commission on Immigration and Naturalization, September-October 1952, 82d Cong., 2d Sess., Committee Print, pp. 597, 1051, 1064, show clearly a desire to reduce the number of contracted migrants and increase the number of permanent, resident, farm workers.

390

of employment at that time were signed by one who had been declared by the Secretary of Labor to be ineligible to contract Mexican agricultural workers. Therefore, the special inquiry officer had found the applicant excludable under section 212(a)(14)(B) as a person whose employment "would adversely affect the wages and working conditions of the workers in the United States similarly employed," pursuant to the determination and certification of the Secretary of Labor under the provisions of section 212(a)(14)(B) of the Immigration and Nationality Act. We ordered the record reopened in order that the alien might secure a different employer and a new affidavit of support.

The special inquiry officer now finds that the applicant is no longer destined to an ineligible employer, but has secured an affidavit of support and employment by a rancher in Marysville, California, whose name does not appear on any list of ineligible employers. He found that the applicant presented a valid nonquota immigrant visa and a valid Mexican passport, and is not otherwise excludable or inadmissible to the United States under section 212 (a)(14)(B) of the Immigration and Nationality Act.

The District Director at Los Angeles urges that the special inquiry officer erred on the ground that the applicant was ineligible to receive a visa at the time it was issued to him on October 10, 1960. The District Director states that the authority to revalidate or reissue a visa is vested entirely in the Department of State, and that the special inquiry officer is not authorized to revalidate a visa by acceptance of documents in support of the application for the visa. He urges that the documents and application for revalidation must be made to the visa issuing authorities of the Department of State, and that this is the applicant's only relief. It is the opinion of the District Director that the visa was issued in error and was, and is, invalid.

It is the Board's opinion that the alien fell within an "ineligible class" solely because his prospective employer was, unknown to the alien, an "ineligible employer." The certification under section 212 (a)(14)(B) does not appear to hold the alien ineligible to receive a visa except for his employment and this condition depends, in turn, upon the ineligibility of the employer. When the alien found an eligible employer, the disability was removed. The list is "of employers declared ineligible to contract Mexican nationals," and the ineligibility related to the prior prospective employer, rather than to the applicant. As we pointed out in our decision of March 8, 1961, there is nothing in the statute or in the legislative history of the statute that indicates that section 212(a)(14)(B) should be used in the manner in which it has been used in this case, and certainly its use in this fashion should not be extended to create unnecessary diffi-

culties. It is our opinion that by complying with the order of the Board of March 8, 1961, the alien has cured the obstacle to his admission created by the ineligibility of his former prospective employer. The order of the special inquiry officer of May 23, 1961 will be approved.

**ORDER:** It is ordered that the order of the special inquiry officer be and is hereby approved.