Sam T. COBB, Jr., Appellant,

v.

Tracy C. MURRELL, Regional Administration, Bureau of Employment Security, United States Department of Labor, Appellee.

No. 23916.

United States Court of Appeals Fifth Circuit.

Nov. 27, 1967.

Thomas R. Hartnett, III, Irving, Tex., for appellant.

David L. Rose, Robert V. Zener, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The father of five children seeks the solicitous and sensitive nursing, maid, and housekeeping talents of a Mexican alien, Maria Cruz Aguirre Garcia (Maria). From November, 1964, to May, 1965, while illegally in the United States, Maria had worked for Cobb in such capacity. On the latter date she was apprehended by the authorities and returned to Mexico. Cobb was unable to find an acceptable substitute for Maria and filed application with Tracy Murrell, the Regional Administrator of the Bureau of Economic Security, for permission to bring Maria back into the United States. On August 24, 1965, Cobb's application was rejected on the grounds that employment of Maria "will adversely affect the wages and working conditions of workers in the United States similarly employed" and that "sufficient workers in the United States, able, willing, and qualified, are available for employment

in this job." Cobb's petition for review in the district court was dismissed on June 22, 1966, for failure to state a claim within the jurisdiction of that court. We affirm.

Under the law applicable at the time of the Regional Director's rejection of Cobb's application, Section 212(a) (14) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(a) (14) (1953),[1] a "non-quota immigrant" was excluded from admission to the United States if the Secretary of Labor determined:

"(A) sufficient workers in the United States who are able, willing, and qualified are available at the time (of application for a visa and for admission to the United States) and place (to which the alien is destined) to perform such skilled or unskilled labor, or (B) the employment of such aliens will adversely affect the wages and working conditions of the workers in the United States similarly employed."

Authority for this determination was and still is delegated through the Labor Department's United States Employment Service to the Bureau of Employment Security and the Regional Administrators thereof. Cobb seeks to obtain judicial review of the Regional Administrator's adverse certification, alleging that it was arbitrary unreasonable, and capricious.

Maria is not and has not been a party to the action. Her voice from Mexico is not even ventriloquated to us. She is not on any border or ship asking for admission. For all we know, she is happy south of the border. However, since Cobb is challenging agency discretion which affects her rights as well as his, we advert to a discussion of her rights.

In Brownell v. Tom We Shung, 1956, 352 U.S. 180, 184, 77 S.Ct. 252, 255, 1 L.Ed.2d 225, 229, a case expanding judicial review in alien exclusion cases to such an extent that Congress later contracted it by statute,[2] the Supreme Court was careful to state the following:

"We do not suggest, of course, that an alien who has never presented himself at the borders of this country may avail himself of the declaratory judgment action by bringing the action from abroad." Footnote 3

In Braude v. Wirtz, 9 Cir. 1965, 350 F.2d 702, 703–706, the Ninth Circuit applied the Supreme Court's dictum. One hundred eighty-one Mexican Nationals had sought review of an adverse certification by the California Regional Administrator of the Bureau of Employment Security without claiming detention at the United States border. After analyzing the relevant cases, the Ninth Circuit concluded:

"In light of the foregoing, we are constrained to hold that no right of judicial review exists on the part of these non-resident aliens of determinations made by the executive branch acting pursuant to Congressional directive." 350 F.2d at 706.

We recognize some ambivalence if not inconsistency in granting judicial review for various executive immigration determinations. Compare, for example, Roumeliotis v. Immigration and Naturalization Service, 7 Cir. 1962, 304 F.2d 453,

1. On October 3, 1965, fifteen days before the filing of Cobb's initial complaint in the district court, a revised § 1182 was enacted. The effective date of that revision was December 1, 1965. That Cobb's rights would have diminished, not increased, after December 1, 1965, *is* apparent after a comparison of the old and new provisions, and this is made quite clear by Senate Report No. 748, 89 Cong. 1965, U.S.Code Cong. and Adm.News 1965, pp. 3328, 3342. See also 1 Gordon and Rosenfield, Immigration Law and Procedure, §§ 2.40 and 3.6 (1966) (and sources listed therein); Appleman, "That New Immigration Act," 52 Am.Bar Assoc.Journal 717, 719 (1966); Scully, "Is the Door Open Again?—A Survey of Our New Immigration Law." 13 U.C.L.A. Law Review 227, 242–43 (1966).

2. Section 106(b) of the Immigration and Naturalization Act of 1961, 8 U.S.C.A. § 1105a(b) (Supp.1966). The Congressional purpose of abrogating the doctrine of the *Tom We Shung* case was expressly stated in House Report No. 1086, 87 Cong.1961, U.S.Code Cong. and Adm. News, pp. 2950, 2966, 2974–2977.

455 (at [3]), cert. denied, 1962, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230, with Bergen Dress Co. v. Bouchard, 3 Cir. 1962, 304 F.2d 145, 146–147 (at [1]). Compare also Montgomery v. Ffrench, 8 Cir. 1962, 299 F.2d 730, with the Immigration and Naturalization Service's admission quoted in Hom Sin v. Esperdy, S.D.N.Y.1965, 239 F.Supp. 903, 906. Relevant and exhaustive discussions are found in 2 Gordon and Rosenfield, Immigration Law and Procedure §§ 8.3, 8.21, 8.14, and 8.23 (1966). However, unlike other executive action which may have been authorized with some regard for the rights of aliens, the congressional allocation of authority to the Secretary of Labor, through Section 1182(a) (14), was unequivocal in its exclusive purpose of protecting this country's labor market. That section provided as follows:

"Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and *shall be excluded* from admission into the United States: * * *

(14) Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, if the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that * * * [standards quoted previously in this opinion]. The exclusion of aliens under this paragraph shall apply only to the following classes: * * * [includes Mexican aliens through § 1101 (a) (27) (c)], unless their services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, spe-

cialized experience, or exceptional ability of such immigrants *and* to be substantially beneficial prospectively to the national economy, cultural interest or welfare of the United States." (Emphasis added.)[3]

The congressional purpose for enacting Section 1182(a)(14) is set out in House Report No. 1365, 82 Cong. 1952, U.S.Code Cong. and Adm.News, pp. 1653, 1705:

"Safeguards for American labor. * * *

While the bill will remove the 'contract labor clauses' from the law, it provides strong safeguards for American labor. * * * It is the opinion of the committee that this provision will adequately provide for the protection of American labor against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country."

The exclusion process here is not harnessed to nor pinnacled by a judicial determination. Some administrative decisions in the wisdom of Congress are subject to judicial review, while others achieve finality within the precincts of administrative agencies. When, as here, the Secretary of Labor's determination is made prior to the granting of a visa by an American consul,[4] the aliens seeking entry are given no access to the courts through the Immigration and Nationality Act. The only specification of judicial relief in that Act is Section 106 (b) (1961), 8 U.S.C.A. § 1105a(b) (Supp. 1966), which allows a habeas corpus petition following an exclusion order. As

---

3. The 1965 amendment to § 1182(a), not determinative here, is similar in content but changes the prior law (1) in adjusting coverage of non-Western-Hemisphere aliens to the renovated allocation system for such aliens, (2) in withdrawing discretionary authority of the Attorney General to waive grounds for exclusion, (3) and, most important, in requiring an affirmative finding by the

Secretary of Labor for all aliens seeking entry as workers.

4. After December 1, 1965, the Secretary of Labor's determination will always be made before the granting of a visa by an American Consul. See fns. 1 and 3, supra. See also 1 Gordon and Rosenfield, Immigration Law and Procedure §§ 3.1–3.8 (1966) for general visa procedures.

indicated in footnote 2 supra, that section is designed to restrict, not expand, judicial relief for aliens. Of course, for habeas corpus relief to be applicable, the alien must already be at the border or on a ship headed for the United States. Moreover, the clear purpose of the certification procedure commits such action to "agency discretion" and thus excludes it from the coverage of the Administrative Procedure Act. In 1965 the relevant section of that Act provided:

> "Except so far as (1) statutes preclude judicial review or (2) *agency action is by law committed to agency discretion,* (a) any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." 5 U.S.C.A. § 1009 (Cum.Supp.1950) (Emphasis added.)[5]

Thus, we are in agreement with the Ninth Circuit's specific holding in *Braude* that aliens outside the country have no standing to challenge a determination of the Secretary of Labor that their entry would adversely affect wages and working conditions of workers in the United States. Courts are not universal monitors or ombudsmen of the administrative apparatus of government. When constitutional rights will not be violated, Congress can make an administrative officer the apogee of finality, and no constitutional safeguard requires judicial review in denying entry to aliens. United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317. Cf. Estrada v. Ahrens, 5 Cir. 1961, 296 F.2d 690, 692 (fn. 2).

For Cobb to gain judicial review despite Maria's inaction, he must show that his rights to her entry are superior to the rights of Maria herself. He must show that the Secretary of Labor has violated his rights under either the Immigration and Nationality Act or "any relevant statute." In one statute Congress has, in fact, expressed a concern for potential employers of aliens. Section 204(b) of the Immigration and Naturalization Act of 1952, 8 U.S.C.A. § 1154(b) (1953), effective at the time of Cobb's filing in the district court and similar in relevant part even after December 1, 1965, allowed such employers to file a petition with the Attorney General to grant to a quota immigrant priority status within his country's quota.[6] To adjust this status, the Attorney General must have been convinced that this alien was "needed urgently in the United States," as defined in 8 U.S.C.A. § 1153 (a) (1) (A) (1953). Sparse case authority, not by any means unanimous, indicates that a decision of the Attorney General was subject to judicial review in an action brought by the employer. For example, in Bergen Dress Co. v. Bouchard, supra, 304 F.2d at 146–147, the court granted judicial review of a Section 1154 (b) determination by the Attorney General. In Hom Sin v. Esperdy, supra, 239 F.Supp. at 906, the court quoted with approval the Immigration and Naturalization Service's petition which admitted congressional concern for an employer in a Section 1154(b) determination. But cf. Roumeliotis v. Immigration and Naturalization Service, 7 Cir. 1962, 304 F.2d 453, 455 (at [3]), cert. denied, 1962, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230; Montgomery v. Ffrench, 8 Cir. 1962, 299 F.2d 730.

Of course, Cobb does not even argue that Section 1154(b) applies to him. By its terms it would not affect the status of Mexican aliens who were excluded from all quota systems. 8 U.S.C.A. § 1101(a) (27) (c) (1953).[7] More-

---

5. Virtually the same language is now found in 5 U.S.C.A. §§ 701(a) and 702 (Special Pamphlet 1966).

6. The former quota system for each country is inoperative after December 1, 1965, but the employer's petition continues under the new 8 U.S.C.A. § 1154 (a) (Supp.1966) for the purpose of gaining "preference status" for those aliens subject to numerical limitations.

7. A similar exclusion is still in effect. 8 U.S.C.A. § 1101(a) (27) (A) (Supp. 1966).

over, any review by the Attorney General which potential employers might have had under the final proviso to Section 1182 (a) (14), a provision arguably similar to Section 1154(b),[8] was forfeited by Cobb when he declined to petition the Attorney General.

■ The only argument which Cobb might now assert is that congressional action to aid employers, embodied in Section 1154(b), gave him a legally protected right which was violated by the Secretary of Labor, and that this right is sufficient for obtaining judicial review through either the Administrative Procedure Act[9] or the Declaratory Judgment Act.[10] This argument greatly distorts the proper legislative construct. The thrust of Section 1182(a) (14) is clear—protection of the American labor market. Its restrictive nature in *denying* admission to certain aliens was not offset by Section 1154(b) which merely granted to a potential employer an interest in obtaining alien laborers who *were admissible* but who were placed in a low priority status. We fail to find any hope for Cobb in any statute or in the Constitution.[11]

In Braude v. Wirtz, 9 Cir. 1965, 350 F.2d 702, 706–708, which has been mentioned supra, the Ninth Circuit ruled on the rights of potential employers. California growers, who were anxious to obtain the economical services of the one hundred eighty-one Mexican aliens, had joined the suit against the Secretary of Labor.[12] In dismissing the case, the Court, after a case and statutory analysis, concluded:

"In our view, appellants [growers] have shown neither a legal wrong nor a *legal* right to be free of the effects they attribute the determinations complained of will have upon their businesses." 350 F.2d at 707.

See also the following relevant cases: Texas State AFL–CIO v. Kennedy, 1964, 117 U.S.App.D.C. 343, 330 F.2d 217, cert. denied 1964, 379 U.S. 826, 85 S.Ct. 54, 13 L.Ed.2d 36; Young Americans for Freedom, Inc. v. Rusk, 1962, 113 U.S.App.D.C. 6, 303 F.2d 771, affirming the district court's decision, 205 F.Supp. 603; Montgomery v. Ffrench, 8 Cir. 1962, 299 F.2d 730.

■ Cobb does not challenge Braude v. Wirtz, but he would distinguish it because of the lack of personal relationship between the potential employers and the one hundred eighty-one Mexican alien employees involved. He implies that grief increases in inverse proportion to the number of employees denied entry and that grief from the loss of a single maid's services thereby accelerates to the status of legal grief. That Cobb was sad and dolorous we do not question, but his legal posture does not depend on numbers. He has no vested right to import a human being.

■ Wounded or bruised feelings may be painful, but we do not have a legal right to be free of all insensitive, illogical, or unreasonable hurts. Not all

---

8. Potential employers were not mentioned in § 1182, but the definition in § 1182 (a) (14) of an employee who is "needed urgently in the United States" was exactly the same as that in § 1154(b). This § 1182(a) (14) proviso has been deleted from the current statute. 8 U.S.C.A. § 1182(a) (14) (Supp.1966).

9. Section 1009(a) of that Act is quoted supra.

10. 28 U.S.C.A. § 2201 (1959): "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal rela-

tions of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

11. See, generally, Jaffe, "Standing to Secure Judicial Review: Private Actions," 75 Harvard Law Review 255 (1961).

12. Appellee Murrell has alerted us that in this case Cobb did not join the Secretary of Labor as a party defendant. Because we will dismiss this case on the issue of standing, however, we will not determine the status of the Secretary for the issue of indispensable parties.

wounds are nursed by courts. Standing to seek judicial dispensation of curative justice is controlled by the accumulated wisdom of case and statutory law which here commands finality in administrative adjudication.

Affirmed.