**REDDY, INC., et al., Plaintiffs,**

**Vishwas B. Dhekney, Plaintiff-Appellant,**

**v.**

**UNITED STATES DEPARTMENT OF LABOR, etc., Defendant-Appellee.**

**No. 73-1275.**

United States Court of Appeals, Fifth Circuit.

April 10, 1974.

A. Don Crowder, Dallas, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for defendant-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Vishwas Dhekney, an Indian national, sought an immigrant visa for permanent residence in the United States under 8 U.S.C. § 1153(a)(3), which excludes:

> Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a)(ii) of this title, to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States.

An alien seeking admission under (a)(3) must, however, show that he is not excluded from admission by reason of the provisions of 8 U.S.C. § 1182(a)(14), which provides:

> Aliens seeking to enter the United States, for the purpose of performing

skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a)(27)(A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title;

The certification procedures of the Secretary of Labor are delegated to the Manpower Administration of that department "for the area of the alien's intended residence." 29 C.F.R. § 60.3(b).

To facilitate the processing of requests for certificates, the Secretary of Labor has made determinations of various categories of employment with respect to which certification will issue. This is covered by 29 C.F.R. § 60.-2(a)(1):

For the categories of employment described in Schedule A at § 60.7 except for any geographic limitations therein set forth, there are not sufficient workers who are able, willing, qualified, and available for employment and the employment of aliens in such categories in such areas will not adversely affect the wages and working conditions of workers in the United States similarly employed.

With respect to various other categories certification is foreclosed by 29 C.F.R. § 60.2(a)(2):

For the categories of employment described in Schedule B at § 60.7 subject to any geographic limitations therein set forth, the certification required by section 212(a)(14) cannot now be made.

Dhekney's employment did not fall within either Schedule A or Schedule B, so that he (or a person on his behalf) was required to file a Statement of Qualifications of Alien form under 29 C.F.R. § 60.3(b). This Dhekney did through his employer, Reddy, Inc., which previously had employed him and, representing that it was unable to replace him, desired to reemploy him. Reddy identified itself on the application as engaged in "metal roll forming and fabrication." It described the job offered to Dhekney as "engineering design specialist in light gauge metals." It further described the job, and special requirements for it, thusly: "Design light gauge metal structures, estimate costs, develop light gauge metal applications, develop light gauge metal empirical test data, supervise field construction of light gauge metal structures . . . studies in elastic stability of light gauge, thin walled steel sections [,] familiarity with light gauge metal theory and applications."

Reddy, Inc. is a small company whose only plant is located in Dallas, Texas. Thus Dallas was the "area of the alien's intended residence." The application was filed June 26, 1972, with the Regional Manpower Administrator in Dallas. It was denied one day later, June 27, by a letter stating:

On the basis of information available to us, we cannot issue the certification required by Section 212(a)(14) of the Immigration and Nationality Act, as amended.

Reason: Available job market information will not warrant a certification of unavailability of workers in the U.S.

U.S. workers are available. Labor market information indicates a surplus of engineers who are willing to relocate.

The record does not reveal the "information available to [the Administrator]" on which these conclusions were reached.

On July 14, Reddy, on Dhekney's behalf, filed what it styled an "application for reconsideration . . . based on new facts and clarification of information not formally presented in the original request." Included was this statement:

> At the suggestion of Mr. Maceo Johnson, Mr. E. W. Gloer of the National Registry for Engineers was contacted (see enclosure 2). Mr. Gloer affirmed that the combination of skills which were necessary for our purposes, i. e. a civil engineer with specialization and proficiency in the use of light gauge steel was extremely unique. He further stated that he would confirm this fact to the Department of Labor in Dallas, on request. Telephone number: (916) 445-4344.

Attached was the following memorandum signed by the president of Reddy (though undated it appears from its face to relate to a date between the denial of June 27 and the filing of the "application for reconsideration" on July 14):

> This date, the undersigned and Mr. V. Dhekney, met with Mr. Johnson, Department of Labor, with regard to the determination made on the application for Alien Employment Certification for Mr. Dhekney dated, June 27, 1972. I explained to Mr. Johnson that our requirement was not for a general Civil Engineer but specifically for a Civil Engineer specializing in light gauge steel. Mr. Johnson related that he was not a specialist in engineering qualifications and that he made his determinations based on information provided him concerning the availability of engineers classified in broad categories (in this case, Civil Engineers). I explained that I had attempted to obtain another engineer with Mr. Dhekney's qualifications through advertising and through the Texas Employment Commission and that I was completely unsuccessful in this endeavor. Mr. Johnson stated that a determination of this type could be made by the National Registry for Engineers (NRE) in Sacramento, California and he instructed me to call or write to Mr. E. W. Gloer of NRE.

> Pursuant to Mr. Johnson's instructions, I called Mr. E. W. Gloer and informed him of our requirements as per attached job description. In response Mr. Gloer said that an engineer proficient in light gage steel with a background of Civil Engineering was extremely rare. He agreed to confirm our conversation if the Dallas Labor & Manpower Department needed verification.

The Reviewing Officer affirmed the Certifying Officer in a written decision dated July 18. The decision defined the issue to be "the availability of qualified United States workers," and then stated, in pertinent part:

> The petition for review reveals that appellant has consulted the National Registry for Engineers as to the availability of United States workers with the specific qualifications of the position under consideration. Said petition further discloses that the National Registry considered the combination of skills required by appellant employer to be unique.

> Communications with the National Registry for Engineers confirmed that the combination of skills required for the position was unique. However, it is the combination of engineering skills possessed by the alien that is unique, in that a civil engineer is not usually proficient in light gauge steel. It does not follow that there are no United States engineers available with proficiency in light gauge steel. Further communication with the National Registry revealed that specialization in light gauge steel is

usually one of the skills included in that of mechanical engineer. A review of said Registry discloses an ample supply of qualified mechanical engineers. Based on these facts, it is clear there is no shortage of qualified United States workers.

In addition to the foregoing, it is noted that the record in this case discloses that subject alien is to be paid $750.00 a month. Such wage is below the prevailing wage for the occupation of Civil Engineer. The prevailing wage rate for this occupation ranges from $800.00 to $1,000.00 a month. Section 212(a)(14)(B) of the aforestated Act precludes labor certification when such would adversely affect the wages and working conditions of similarly employed United States workers. Even if we were to find that United States workers are not available, in this case, the substandard wage would still preclude the issuance of a labor certification.

Dhekney and Reddy then brought this action in the District Court for the Northern District of Texas. The United States filed a certified copy of the proceedings before the Regional Manpower Administrator, and the parties filed cross motions for summary judgment. The District Court granted summary judgment for the Government on the basis of part (A) of § 1182(a)(14), holding that the Regional Manpower Administrator did not abuse his discretion "in determining that there are American workers who are available *within the United States* that are able, willing and qualified to perform the work in which plaintiff Dhekney was employed by Reddy to perform." (Emphasis added.)

■■■ On our own motion we have raised the issue of the authority of a federal district court or court of appeals to review a decision of the Secretary of Labor made pursuant to § 1182(a)(14). Our concern was prompted in part by our decision in Cobb v. Murrell, 386 F.

2d 947 (CA5, 1967). In response to our request for supplemental briefs addressing *Cobb* and the general issue of authority to review, the Department of Labor has taken the position that *Cobb* is distinguishable and that federal courts have authority to exercise limited review. We agree. In *Cobb* we determined that a federal court lacked power to review a decision of the Secretary of Labor denying § 1182(a)(14) certification where the action was brought by the potential employer and the alien denied certification was not a party to the action, was not present in the country, and was "not on any border or ship asking for admission." 386 F.2d at 949. Dhekney's case, however, is quite different. Not only is he, unlike the alien in *Cobb*, a party to the action, but also he was, unlike the alien in *Cobb*, already lawfully present in the United States when he sought certification under § 1182(a)(14). The relevance of these differences is, in brief, that in *Cobb* neither the alien nor the employer had legal standing to attack the decision, while in the present case it is clear that at least Dhekney has such standing.[1]

*Cobb* contains language which, if removed from its context, would appear to preclude review pursuant to the Administrative Procedure Act (APA) of Labor Department determinations under § 1182(a)(14). After concluding that review was not granted by the then existing provisions of the Immigration and Nationality Act, we stated in *Cobb*:

> Moreover, the clear purpose of the certification procedure commits such action to "agency discretion" and thus excludes it from the coverage of the Administrative Procedure Act.

386 F.2d at 951. But examination of the opinion seems to us to reveal that the basis for finding the APA inapplicable was that neither the non-party alien nor the plaintiff employer had suffered the sort of injury to a protected legal right necessary for standing to seek re-

---

1. Since Dhekney is a party, we need not address the question whether Reddy, Inc., his employer, has independent standing to seek review.

view under the APA. In the paragraph following the one quoted above, the court said,

> Thus, we are in agreement with the Ninth Circuit's specific holding in *Braude* [2] that aliens outside the country have no standing to challenge a determination of the Secretary of Labor that their entry would adversely affect wages and working conditions of workers in the United States.

386 F.2d at 951. And still later in discussing the rights of the employer the court noted,

> The only argument which Cobb might now assert is that congressional action to aid employers, embodied in Section 1154(b), gave him a legally protected right which was violated by the Secretary of Labor, and that this right is sufficient for obtaining judicial review through either the APA or the Declaratory Judgment Act.

The court then found that no such legally protected right existed and concluded, "We fail to find any hope for Cobb in any statute or in the Constitution." 386 F.2d at 952.

We think it beyond dispute that Dhekney, an alien lawfully resident in this country at the time he sought § 1182(a)(14) certification, is "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702,[3] and is therefore entitled to review unless "statutes preclude judicial review" or "agency action is committed to agency discretion by law," 5 U.S.C. § 701. The APA's judicial review provisions were designed to be applied broadly, and "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 686–687 (1967), citing Rusk v. Cort, 369 U.S. 367, 379–380, 82 S.Ct. 787, 794, 7 L.Ed.2d 809, 817 (1962). We find no such evidence here.[4] Nor can we accept the notion that this deter-

---

2. In Braude v. Wirtz, 350 F.2d 702 (CA9, 1965), the Ninth Circuit held that 181 Mexican nationals residing in Mexico and seeking to immigrate to California for agricultural employment had no right to judicial review of a Labor Department determination under § 1182(a)(14) that their employment would "adversely affect wages and working conditions."

3. "The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders. Such rights include those protected by the First and Fifth Amendments and by the due process clause of the Fourteenth Amendment." Bridges v. Wixon, 326 U.S. 135, 161, 65 S.Ct. 1443, 1455, 89 L.Ed. 2103, 2119 (1945) (Concurring opinion of Justice Murphy).

4. The Immigration and Nationality Act contains no explicit preclusion of review of the decision complained of, nor does it establish any special procedure for the review of such decisions. It does establish exclusive procedures for "judicial review of all final orders of deportation," 8 U.S.C. § 1105a(a), and for judicial review of "final order[s] of exclusion," 8 U.S.C. § 1105a(b), and the legislative history evidences a desire to restrict the methods of reviewing such orders to those set out in the statute, 1961 U.S.Code Cong. & Admin.News pp. 2966–2977. But the determination here is not an order of either type. So far as we can tell, no order of deportation or exclusion has ever been issued against Dhekney. (Whether the determination here is one which could be reviewed in a § 1105a proceeding in the Court of Appeals or habeas corpus proceeding after issuance of a final order is a complex question on which we express no opinion.) Deferring review until the issuance of such an order would serve no function since the determination is not one susceptible of modification by the Immigration and Naturalization Service but is rather a determination assigned by the statute to the Department of Labor, whose provisions for internal review Dhekney has exhausted. Although neither the statute nor departmental regulations establish any procedure for obtaining judicial review of the decision, there is no indication in § 1182(a)(14) itself or in its legislative history, see 1965 U.S.Code Cong. & Admin.News p. 3328 et seq., of a desire to preclude such review.

mination is committed to agency discretion to such an extent as to preclude our limited review for erroneous application of the statutory standards. The findings required under § 1182(a)(14) are quite specific. There is little room for the exercise of that unfettered discretion based on unique competence which justifies a court in refusing any review at all. Cf. Ferry v. Udall, 336 F.2d 706, 711–712 (CA9, 1964); Davis, Administrative Law Treatise, § 28.16 (Supp. 1970). Additionally, as this court observed in a case somewhat similar to this one, "In immigration and deportation cases courts have been especially responsive to the powerful pull of the [Administrative Procedure] Act in the direction of the right of judicial review of agency action." Estrada v. Ahrens, 296 F.2d 690 (CA5, 1961).

Our conclusion that review under the APA is available is in accord with the decisions of at least two other circuits in similar cases. Song Jook Suh v. Rosenberg, 437 F.2d 1098 (CA9, 1971) and Mendez v. Major, 340 F.2d 128 (CA8, 1965), and with the decisions of a number of district courts in circumstances almost identical to those here. First Girl, Inc. v. Regional Manpower Administrator, 361 F.Supp. 1339 (N.D.Ill. 1973); Digilab, Inc. v. Secretary of Labor, 357 F.Supp. 941 (D.Mass.1973); Bitang v. Regional Manpower Administrator, 351 F.Supp. 1342 (N.D.Ill.1972); Golabek v. Regional Manpower Administration, 329 F.Supp. 892 (E.D.Pa.1971).

■ We turn then to consideration of the merits. The decision of the Reviewing Officer did not respond at all to the *"at the place* to [sic] which the alien is destined to perform such skilled or unskilled labor"* requirement of the statute. That place was the Dallas, Texas, area, and the decision referred to only "United States engineers" and "qualified United States workers." The "at the place" provision of the statute is reflected in the implementing Regulations. The scheduled categories entitled to automatic certification under Schedule A are in terms of "in such areas." 29 C. F.R. § 60.2(a)(2). And, as we have already pointed out, the request for certification goes to the office of the Manpower Administration "for the area of the alien's intended residence." 29 C.F. R. 60.3(b).[5] Thus, the reviewing officer's determination is patently insufficient. We have examined the record and can find not a whisper of evidence relating to availability of workers—mechanical engineers or civil engineers—in the area of Dallas, Texas. The Reviewing Officer's erroneous standard was compounded by the District Court's application of the standard of workers available "within the United States."

■ The District Judge did not reach the Reviewing Officer's determination under (B) of § 1182(a)(14) relating to wage rates. The administrative action cannot, however, be saved under that finding. Having characterized the labor to be done by appellant as that of a *me-*

---

5. Dhekney was an applicant allegedly qualified as a professional, and therefore his request fell under § 60.3(b). A person performing unskilled labor falls under subsection (c) of the same regulation, but he is governed by the same statutory provision, e. g., § 1182 (a)(14). The regulations governing an application by such a worker accentuate the statutory requirement of localized information concerning the proposed place of employment. The unskilled applicant must have his prospective employer file a "Statement of Qualifications of Alien" form, a "Job Offer for Alien Employment" form, and in some cases a "Supplemental Statement for Live-at-Work Job Offers," all with a local office of the State Employment Service serving the area where he will be employed. The state office reviews the forms and "area labor market information pertaining to the availability of U. S. workers and the prevailing wages and working conditions in the area of employment similar to the alien's intended employment." 29 C.F.R. § 60.3(c). It then forwards the forms and information to the office of the Manpower Administration for that area. The regulations then provide: "a labor certification determination will be made based on the information submitted by the State Employment Service and any other applicable data available to the Manpower Administration area office." *Id.*

*chanical* engineer, and having found adversely to appellant, under (A), by examining [under an erroneous standard] the supply of qualified mechanical engineers, the officer found adversely against him under (B) by examining the wages of *civil* engineers. The phrase "similarly employed" in (B) describes those persons performing the labor referred to in the introductory clause of subsection (14) and in (A) of that subsection. If appellant were trained in the ministry but performing light gauge steel work, the relevant wages and working conditions of "the workers in the United States similarly employed" would be those of persons performing light gauge steel work, which by the Department's definition is mechanical engineer's work, and not the wages and working conditions of ministers.

■ The decision of the District Court must be reversed and the cause remanded to the District Court with instructions to remand to the Department of Labor for reconsideration of the application under proper standards. The inquiry under Section 1182(a)(14) into the sufficiency of workers is "at the time of application," an inquiry hardly susceptible of retrospective determination. Necessarily the Department's reconsideration must be in the light of the facts existent at the time of reconsideration, with respect to both sufficiency of workers and adverse effect on wages and working conditions of workers similarly employed.

Reversed and remanded with directions.

CLARK, Circuit Judge (concurring in part and dissenting in part):

I concur in holding that judicial review is proper.

The majority opinion does not hold that the RMA's refusal to certify Dhek-

ney as a third preference alien was arbitrary and capricious. *See* Golabek v. RMA, 329 F.Supp. 892 (E.D.Pa.1971). Instead, it premises its conclusion that the reviewing officer must have applied an incorrect legal standard upon two factors: (1) the RMA reviewing officer's opinion did not specifically speak in terms of the "at the place" requirement of 8 U.S.C. § 1182(a)(14), and (2) the record contains "not a whisper of evidence relating to availability of workers—mechanical engineers or civil engineers—in the area of Dallas, Texas." I am persuaded that this reasoning is predicated upon two misconceptions. First, the majority fails to accord the RMA findings the presumptive correctness to which they are entitled and secondly, the majority fails to recognize the correct burden of proof to be applied in this case.

I do not say that the RMA can disregard the "at the place" requirement of 1182(a)(14), but I do say that they have not done so. In the instant case, the reviewing officer stated that based upon his communications with the National Registry for Engineers "it is clear that there is no shortage of qualified United States' workers." Such language is entirely consistent with application of the correct statutory standard.[1] For example, the reviewing officer could have considered only those individuals listing a residence in the Dallas area or indicating an interest in locating there in making his determination, or he could have determined that because of the large number of qualified mechanical engineers listed, the statistical probability was such that some of these would be interested in working in the Dallas area. The majority, however, decides that because the reviewing officer's findings do not track the statute *in haec verba* he must have overlooked the terms of the statute he is charged with applying.

1. It is worthy of note that the certifying officer whose decision was before the reviewing officer found that "[l]abor market informa- tion indicates a surplus of engineers who are willing to relocate."

This deduction is contrary to the presumption of correctness which must be accorded the RMA's administrative findings. Furthermore, conceding *arguendo* the lack of "a whisper" of evidence in the record of availability of qualified workers in the Dallas area would not change things. The majority does not decide that the RMA's determination was contrary to the proof and therefore arbitrary and capricious, but only that the reviewing officer applied the wrong standard.

The statute under which Dhekney sought certification, 8 U.S.C. § 1182(a)(14), is phrased in terms of an alien's *ineligibility unless* it can be certified that such alien meets the requirements specified in 1182(a)(14)(A) & (B). Accordingly, the burden was on Dhekney to show entitlement to certification and not upon the RMA to demonstrate that he was not so entitled. I would not find that the RMA abused its discretion in not certifying Dhekney.

Dhekney and Reddy presented no evidence to show unavailability of workers in the Dallas area. Reddy's asserted failure to find a replacement for Dhekney is too narrow and subjective to meet such a burden. The statute is not designed to fulfill a peculiar manpower requirement of a particular employer but is designed to benefit "prospectively the national economy, cultural interests, or welfare of the United States." As recognized by the reviewing officer, Reddy created the description of a unique combination of skills which were really job-acquired talents rather than qualifications for employment (civil engineer proficient in light gauge steel structures), adopted them as prerequirements for its job, and then has sought certification for Dhekney upon its failure to find any other individual with such a novel combination of skills.

Because I would affirm, I respectfully dissent.