**Tayeb A. MUKADAM, Plaintiff,**

v.

**U. S. DEPARTMENT OF LABOR, EMPLOYMENT AND TRAINING ADMINISTRATION, REGION II, and Leonard Kleinman, Reviewing Officer for Employment and Training Administration, Region II, U. S. Department of Labor, Defendants.**

**No. 77 Civ. 5593.**

United States District Court,
S. D. New York.

Oct. 13, 1978.

Schaier, Tribbitt & Schaier, New York City, for plaintiff; Hermann Schaier, Charles R. Tribbitt, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Carol Fein, Asst. U. S. Atty., of counsel.

LASKER, District Judge.

Tayeb Mukadam sues to set aside, as an abuse of discretion, a decision by the United States Department of Labor denying him certification under § 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14). Both Mukadam and the government move for summary judgment in their favor on the basis of the undisputed facts. For the reasons which follow, Mukadam's motion is granted and that of the government denied.

Mukadam, a citizen of India residing in the United States on a temporary visa, seeks to obtain permanent residence in the United States by being allocated a "third preference" visa as a member of a profession. See 8 U.S.C. § 1153(a)(3).[1] As part of

---

1. Section 203(a)(3), 8 U.S.C. § 1153(a)(3) (1970) provides:

    "(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:

    \*      \*      \*      \*      \*      \*

    (3) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a)(ii) of this title, to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States."

the process, he applied in October of 1975 for certification from the Department of Labor, under § 212(a)(14) of the INA, that there were not already sufficient workers in the United States "able, willing, qualified, and available" to perform his work and that his employment would not have an adverse effect on wages and working conditions of similarly employed workers in the United States.[2] The Department of Labor classified Mukadam, who has a degree in food technology and has done research in the area of food toxicity, as a food chemist and denied his application for certification, informing him that it found "[M]any qualified applicants available in this field thru [sic] the American Chemical Society." (Letter of September 1, 1976). However, the actual data relied on by the Certifying Officer was not supplied to Mukadam.

Mukadam twice appealed this decision to a Reviewing Officer within the Department of Labor. He argued that, since his own communications with the American Chemical Society revealed that it had listed only "*several* chemists who have background in food chemistry and *a few* with experience in toxicity studies" (Am.Chem.Soc. Letter of October 15, 1976) (emphasis added), the agency decision that "many" workers were available was unsupported by the evidence.

Both appeals were denied by the Reviewing Officer. In his letter denying the first appeal, the Reviewing Officer simply reiterated the finding below that "many" food chemists were listed in the files of the

American Chemical Society. In response to the second appeal, however, the Reviewing Officer himself telephoned three laboratories in the New York area which specialized in toxicity testing, Mukadam's area of expertise. These calls revealed, as the Reviewing Officer informed Mukadam by letter, that "applications are received daily for employment at these laboratories and all are advised that no openings exist." (Letter of December 29, 1976) Accordingly, the second appeal was also denied. In seeking judicial review of the denial of certification, Mukadam again asserts that the original decision was unsupported by the evidence and also that the Reviewing Officer violated agency rules governing the procedures for appeal by conducting an independent survey of the job market.

## I.

*Standing To Seek Judicial Review*

■ The government contends that Mukadam lacks standing to seek judicial review of the agency's decision since his interest in certification is not " 'arguably within the zone of interests to be protected or regulated' " by § 212(a)(14). See, *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Ass'n of Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Both the language and

Although sections of the Immigration Act relevant to this case were amended in 1976, these sections did not become effective until January of 1977 and, by virtue of a savings clause, Mukadam's application, which was made in 1975, is governed by the earlier statute and regulations. Pub.L. No. 94–571, § 9, 90 Stat. 2707 (1976).

**2.** Section 212(a)(14), 8 U.S.C. § 1182(a)(14) (1970) provides:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of

Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and that the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply . . . to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title;[.]"

legislative history[3] of § 212(a)(14), it argues, indicate that this section is designed primarily to protect American workers from foreign competition and secondarily to provide American employers with access to a larger labor pool but not to protect the interest of the alien in securing residence and employment in the United States. Consequently, the government asserts that an alien can secure judicial review of a denial of certification only if his employer sues on the alien's behalf. In support of this argument, it cites a number of cases in which standing has been found under § 212(a)(14) to be that of the employer rather than his employee. See, *inter alia, Acupuncture Center of Washington v. Dunlop,* 177 U.S.App.D.C. 367, 543 F.2d 852 (1976); *Pesikoff v. Secretary of Labor,* 163 U.S.App.D.C. 197, 501 F.2d 757 (1974); *Digilab Inc. v. Secretary of Labor,* 495 F.2d 323 (1st Cir. 1974); *Secretary of Labor v. Farino,* 490 F.2d 885 (7th Cir. 1973).

The government's analysis of § 212(a)(14) is unduly narrow. While it is undeniable that this section places the burden on the alien, nevertheless, it is part of a statutory scheme which extends to aliens who are professionals the right to seek permanent residence in the United States. Moreover, in 1975, when Mukadam filed his application for certification, the Immigration Act permitted aliens residing in the United States to apply for third preference status (which requires certification) without a specific offer of employment.[4] It follows that at that time Congress did intend to confer directly on aliens the right to seek permanent residence without the intercession of an employer. It would be inconsistent with this intent to limit judicial review of a denial of certification to aliens whose petitions are joined in by an employer when denial of certification forecloses an alien from seeking a third preference visa.[5]

None of the decisions cited by the government compels a contrary conclusion. In those cases, the courts properly confined themselves to ruling on the narrower ground that an employer's interest is clearly protected by the statute and left open the question whether the alien's interest alone was sufficient to justify standing. Accordingly, we find that Mukadam does have standing to contest the denial of certification.[6]

---

3. The Senate Report to the 1965 amendments described the version of § 212(a)(14) which went into effect at that time (and which remains substantially unchanged) in this way:

   "[The current provision] . . . has the effect of excluding any intending immigrant within the scope of the certification who would likely displace a qualified American worker or whose employment in the United States would adversely affect the wages and working conditions of workers similarly employed in the United States. Under the instant bill, this procedure is substantially changed. The primary responsibility is placed upon the intending immigrant to obtain the Secretary of Labor's clearance prior to the issuance of a visa establishing (1) that there are not sufficient workers in the United States at the alien's destination who are able, willing, and qualified to perform the skilled or unskilled labor and (2) that the employment of the alien will not adversely affect wages and working conditions of U.S. citizens similarly employed. * * * "

   S.Rep.No.748, 89th Cong., 1st Sess., 15 (1965), U.S.Code Cong. & Admin.News, pp. 3333–34.

4. The statute has since been amended to limit third preference visas to aliens "whose services . . . are sought by an employer in the United States." § 203(a)(3) as amended by Act of October 20, 1976, Pub.L. No. 94–571, § 4, 90 Stat. 2705. However, Mukadam's application is governed by the terms of the statute in effect at the time of the application. *See* note 1, *supra.*

5. The government disagrees with the contention that denial of certification will necessarily preclude Mukadam from receiving a preference visa. It points out that § 203 sets out a number of other bases for securing a preference visa which the Immigration and Naturalization Service is free to consider. While this is true, and may help applicants who are eligible to apply for other forms of preference visas, it is of no value to Mukadam, whose only basis for applying for a preference visa appears to be his status as a professional.

6. Moreover, at least one court has already decided the standing question in favor of one in Mukadam's position. *Reddy v. United States Department of Labor,* 492 F.2d 538 (5th Cir. 1974). See also, *Hom Sin v. Esperdy,* 239 F.Supp. 903 (S.D.N.Y.1965) (alien has standing to sue for declaratory judgment seeking review of denial of petition for first preference status by Immigration and Naturalization Service.)

## II.

*Did the Agency Decision Constitute an Abuse of Discretion?*

### A.  The Decision of the Certifying Officer

■ An agency decision may be set aside under 5 U.S.C. § 706(2)(A) as arbitrary, capricious and an abuse of discretion when it is made "without a rational explanation" or "inexplicably departed from established policies," *Wong Wing Hang v. Immigration and Naturalization Service,* 360 F.2d 715, 719 (2d Cir. 1966). This ordinarily narrow standard of review is all the more restricted in the context of alien immigration, where the burden on the Secretary of establishing sufficient American workers is minimal and has been described in this way:

> "Given the presumption of the statute against admission, if the Secretary's consultation of the general labor market data readily available to him suggests that there is a pool of potential workers available to perform the job which the alien seeks, the burden should be placed on the alien or his putative employer to prove that it is not possible for the employer to find a qualified American worker." *Pesikoff v. Secretary of Labor, supra,* 163 U.S.App.D.C. 197, 201, 501 F.2d 757, 761.

■ If the only objection to the decision of the Certifying Officer were a dispute as to whether "many" or "several" workers were already available, we would dismiss Mukadam's claims as clearly unpersuasive in light of the narrow standard of review. However, for other reasons, the data relied on by the Certifying Officer, which has been made available for the first time as part of the government's reply brief, appears insufficient under § 212(a)(14).

Section 212(a)(14) directs the Secretary of Labor to determine whether sufficient American workers are available *"at the place to which* the alien is destined to perform such skilled or unskilled labor" (emphasis added). Despite this statutory requirement, the figures relied on by the Certifying Officer establish only that the American Chemical Society had listed with it in January of 1976[7] a total of nine "Agricultural/Food" chemists in the nation as a whole with no evidence that any of the nine resided in the New York area in which Mukadam proposes to work.

The government contends that the Department of Labor is not required to look to the availability of workers in a specific part of the country unless the alien has a definite offer of employment there. However, it offers no authority in support of this position, and we find that it is at odds with the Labor Department's regulations governing certification. These regulations provide that the alien's application for certification must be decided by the office of Manpower Administration of the Department of Labor in "the area of the alien's intended *residence",* 29 C.F.R. § 60.3(b) (1976 ed.) (emphasis added) and that certification is valid for this area only, 29 C.F.R. § 60.5(e) (1976 ed.) Thus the entire thrust of the Department's regulations is to make certification a local determination.[8] Indeed, the facts in

---

7. The data was therefore eight months old by the time the decision of the Certifying Officer was issued in September of 1976.

8. *Cf. Reddy, Inc. v. United States Department of Labor, supra,* 492 F.2d 538, 544, in which the Court of Appeals for the Fifth Circuit found a denial of certification, to be "patently insufficient":

> ". . . The decision of the Reviewing Officer did not respond at all to the '*at the place* to [sic] which the alien is destined to perform such skilled or unskilled labor' requirement of the statute. That place was the Dallas, Texas, area, and the decision referred to only 'United States engineers' and 'qualified United States workers.' The 'at the place' provi-

sion of the statute is reflected in the implementing Regulations. The scheduled categories entitled to automatic certification under Schedule A are in terms of 'in such areas.' 29 C.F.R. § 60.2(a)(2). And, as we have already pointed out, the request for certification goes to the office of the Manpower Administration 'for the area of the alien's intended residence.' 29 C.F.R. 60.3(b). Thus, the reviewing officer's determination is patently insufficient. We have examined the record and can find not a whisper of evidence relating to availability of workers—mechanical engineers or civil engineers—in the area of Dallas, Texas." (footnote omitted)

this case justify such a requirement since it borders on irrationality, to say the least, to conclude that, simply because there are nine food chemists in the nation as a whole, Mukadam's employment in New York State is uncalled for or will necessarily affect the conditions of employment of the others.[9]

Mukadam himself made it perfectly clear that he intended to live in Buffalo, New York, by stating so in his Statement of Qualifications and by filing his application with the Immigration and Naturalization Service in Buffalo, as required by the regulations governing certification, 29 C.F.R. § 60.3(b) (1976 ed.). Under these circumstances, it was error for the Certifying Officer to base his denial of certification on figures dealing with the nation as a whole.

### B. *The Decision of the Reviewing Officer*

■ There remains the question whether the errors in the decision of the Certifying Officer were remedied by the Reviewing Officer's acts when, on appeal from the initial decision, he conducted telephone inquiries in the New York area and concluded that there were sufficient workers in the field of toxicity testing in that area to preclude Mukadam's certification.

The government relies in this regard on the Department of Labor's internal guidelines which permit a Reviewing Officer to conduct independent fact-finding when an alien seeks "reconsideration" of a denial of certification. However, in the case at hand, Mukadam did not seek "reconsideration." Rather, he *appealed* from his denial, and the very same guidelines cited by the government provide that the procedures for appeal are distinctly different from those governing reconsideration.[10] While reconsideration is basically a resubmittal of an application and requires new fact-finding, an appeal merely "reexamines an initial or prior decision" and, as we read the rule, permits the introduction of no new facts. Since the agency's own guidelines distinguish between the two procedures, the government cannot now seek to ignore the differences between them. Instead of remedying the defect of the earlier decision, the Reviewing Officer thus appears to have compounded it by, in turn, violating agency procedures.

9. The government relies on the decision in *Acupuncture Center of Washington v. Dunlop, supra,* 177 U.S.App.D.C. 367, 543 F.2d 852, for the proposition that the agency is justified in denying certification even when only a limited number of workers is available in the alien's field of employment. We do not believe that the holding in *Acupuncture* supports the result here. In that case, certification was denied following a finding by the Department of Labor that a handful of persons in the Washington, D.C. area had the necessary skills, including proficiency in at least two Chinese dialects, to work at an acupuncture center in that city. Not only did the agency there consult local data, unlike this case, but, since the job opportunities for linguists familiar with at least two Chinese dialects are considerably more limited than those for food chemists, a lesser numerical showing was necessary to establish that "sufficient" workers were available for such work.

10. The guidelines for "Handling Requests for Reconsideration and Appeals of Labor Certification Decisions" provide:

"*Reconsideration vs. Appeal*: A distinct difference must be recognized in the connotations of the terms *reconsideration* and *appeal.* An appeal re-examines an initial or prior decision and takes into consideration the conditions and circumstances that existed at the time the previous decision was made; a rehearing of a case. Reconsideration, on the other hand, is basically a resubmittal of an application for certification. While reconsiderations represents [sic] a review by an authority higher than that under which the initial determination was made, the decision must be based on conditions found to exist *at the time the plea for reconsideration is investigated and evaluated.* The reconsideration process is appellate only in the sense that an initial determination has been made, and the reconsideration decision represents a review by a higher authority . . . ." (emphasis in original)

Mukadam also relies on the following provision from the agency regulations which directs that the initial determination concerning certification and the review of that decision be conducted by different people:

"The Regional Manpower Administrator (or the Administrator for the District of Columbia) or his designated representative, who shall not have participated in the initial determination, shall carry out the review." 29 C.F.R. § 60.4(c) (1976 ed.)

Accordingly, since we find that the Department of Labor violated the terms of the governing statute and regulations by the manner in which it denied Mukadam's application for certification, the decision is set aside and the application is remanded to the agency for redetermination in a manner consistent with this opinion.

It is so ordered.