**TEXAS STATE AFL–CIO, et al.,**
**Appellants,**

**v.**

**Robert F. KENNEDY, Attorney General of the United States, and Raymond F. Farrell, Commissioner of the United States Immigration and Naturalization Service, et al., Appellees.**

**No. 17976.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 17, 1963.

Decided Feb. 6, 1964.

Petition for Rehearing Denied March 18, 1964.

As Amended March 23, 1964.

Mr. Charles J. Morris, of the bar of the Supreme Court of Texas, Dallas, Tex., pro hac vice, by special leave of court, with whom Messrs. J. Albert Woll, Washington, D. C., and L. N. D. Wells, Jr., Dallas, Tex., were on the brief, for appellants. Mr. Robert C. Mayer, Washington, D. C., also entered an appearance for appellants.

Mr. Gil Zimmerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and David Epstein, Asst. U. S. Attys., were on the brief, for appellees Kennedy and Farrell.

Mr. Michael J. Shea, Washington, D. C., with whom Mr. Martin L. Friedman, Washington, D. C., was on the brief, for appellee Thomas Alvarado (Lugo), and certain other appellees.

Before WASHINGTON, DANAHER and McGOWAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This litigation was brought in the District Court by a labor organization active in the Texas counties bordering on Mexico, and by individual workers employed in those counties, to obtain injunctive and declaratory relief against the United States immigration authorities, seeking

to cause the expulsion or exclusion of a certain group of Mexican aliens permitted by those authorities to enter Texas, and to obtain and keep jobs there, in alleged violation of law. This relief would free the plaintiffs-appellants from the competition offered in the local labor market by these aliens. The Mexicans in question are individuals who have been given by the Federal authorities (defendants-appellees) the status of lawfully admitted "immigrants," entitled to permanent residence in this country. They have also been permitted by the defendants-appellees to become so-called "alien commuters," i. e., persons who continue to maintain their homes in Mexico, but who are allowed to cross the border at frequent intervals to pursue their established employment in the United States. This permitted practice has prevailed for some decades, and many thousands of these aliens are said to be holding jobs in the United States, without either residing here or spending any major part of their earnings here.[1]

The plaintiff labor organization sued in a representative capacity on behalf of its members and its affiliated labor groups. In addition, some 188 individuals alleging economic detriment from the activities of the alien commuters sued as plaintiffs on their own behalf and as representatives of others similarly situated. The sole defendants named in the complaint were the two principal Government officials charged with the administration and enforcement of the immigration laws. Some 19 alien commuters intervened as defendants, individually and as representatives of a class. Motions for summary judgment were filed by all parties, and all the defendants moved to dismiss. The motions to dismiss were granted, and the plaintiffs' motion for summary judgment was denied. This appeal followed.

Much of the argument addressed to us relates to the merits of the controversy, namely, whether "alien commuters" are entitled under the law to enjoy the privileges which have long been extended to them.[2] But we do not think it is either necessary or proper for us to express a view on this question.

Assuming the truth of the crucial allegations of the complaint brought by plaintiffs-appellants—namely, that expulsion or exclusion of the alien commuters would result in many jobs becoming available to the individual plaintiffs, or would at least reduce the competition faced by them in seeking employment, that the union is handicapped in its activities by the presence of the alien commuters, and that the latter are employed in this country only because the Government officials charged with the enforcement of the immigration laws have illegally permitted them to enter and to work here—this is not enough to give the plaintiffs-appellants standing to sue the defendant of-

1. The complaint also asked relief, though this was not as strongly urged, with respect to a similar group of Canadians allowed to enter the United States under like conditions to obtain work in American communities near the Canadian-American border.

2. Appellants' main contention on the merits is that the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101 et seq., "contains no provisions to grant permanent resident alien status to aliens who continue to reside in a foreign country, and who desire to enter the United States solely for daily employment as international commuters." Appellants argue that alien commuters cannot be regarded as "aliens lawfully admitted for permanent residence," as permanent residence here has not in fact been achieved, and hence they are not entitled to the privileges of aliens admitted for such residence.

The Government's argument on the merits is essentially based on long-standing administrative application of the immigration laws, before and after the passage of the 1952 Act, so as to permit the practices here attacked. The 1952 Act, says the Government, was drafted in full awareness of these practices by the Congress, and in effect continued them. The Government further argues that an alien who has "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant," see 8 U.S.C. § 1101(a) (20), does not forfeit that status by becoming a commuter.

ficials for declaratory and injunctive relief. Congress has not given them any such standing by express or implied provision of statute—either in the immigration laws or in any other act. Absent such a congressional grant, mere economic competition made possible by governmental action (even if allegedly illegal) does not give standing to sue in the courts to restrain such action. Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955).[3] Even more emphatically must this be so where the competition complained of is sought to be eliminated by the wholesale expulsion or exclusion from this country of persons who have entered in reliance on our laws as interpreted and administered by the officials in charge.

It is quite true that an alien whose status here is threatened by action of our Government is generally granted standing to sue the responsible officials to vindicate his rights in our courts. See, for example, Estrada v. Ahrens, 296 F.2d 690 (5th Cir. 1961). But it does not follow that an alien's status may be judicially attacked by those with competitive interests adverse to his. The present case involves the rights of many thousands of human beings to continued employment in this country. Those persons are entitled to have their status and their rights adjudicated on the particular facts of their own cases, the circumstances of their entry, the representations made to them, the nature of their own conduct, and any other factors which might reasonably be urged on their behalf. Normally any challenge to their status would be brought by the Government officials immediately concerned. It is doubtful indeed whether the legality of the presence in this country of a particular named alien can properly be attacked in a suit brought by a private individual who alleges that he was and is entitled to have the job now held by the alien, and that but for the latter's tenure of the job he would in fact be holding it and enjoying its rewards. Certainly it would be most unjust to allow a labor organization and its members to attack the status of many thousands of aliens—not even naming them as individual defendants—with the aim of dislodging them from their jobs, so that those jobs might then perhaps be obtained for union members.[4] To deny

---

3. Appellants rely on Amalgamated Meat Cutters, etc. v. Rogers, 186 F.Supp. 114 (D.D.C.1960). That case, however, is not persuasive authority for the maintenance of suits of the present sort.

4. Though the individual plaintiffs do not identify themselves as union members, but rather as residents of the United States, their interests seem substantially those of the union and its members. They allege that they have been unemployed at various periods during the years 1960 and 1961, "at a time when commuting aliens with I–151 border crossing cards were working at jobs in the United States which plaintiffs were capable of performing." They further say in the complaint:
"Defendants have largely ignored the provisions of Title 8, U.S.C. §§ 1101(a) (15) (H) and 1184 as a source of alien labor which can be made available without displacing the employment of workers in the United States. Instead, defendants have knowingly permitted the use of permanent resident alien status by commuting aliens who are residents of contiguous foreign territory. By this 'amiable fiction,' I–151 border crossing identification cards, which are designed solely for issuance to bona fide residents of the United States with a current status of permanent resident alien, are used as a device to permit daily commutation entry of residents of a foreign country for the sole purpose of engaging in employment in the United States. Such use violates the Act, and is in derogation of the letter and intent of said Act regarding use of the express provisions referred to herein above, and also Title 8 U.S.C. § 1182(a) (14), for entry of aliens to engage in employment under conditions which will safeguard domestic labor."

We have given full weight to these contentions in reaching our conclusion that the union and the individual plaintiffs have no standing to bring this suit.

standing to a union and its members to bring such a suit is entirely consistent with the rulings in the *Tennessee, Alabama Power,* and *Kansas City* cases, cited above, which denied standing in fairly comparable situations to corporations and their shareholders.

For these reasons, the order of the District Court, dismissing the complaint, will be

Affirmed.