350 F.2d 702
 Emanuel BRAUDE et al., Appellant,
v.
W. Willard WIRTZ, as Secretary of Labor of the United
States, Robert Goodwin, as Administrator of the Bureau of
Employment Security, Dean Rusk, as Secretary of State of the
United States, Glenn E. Brockway, as California Regional
Administrator of the Bureau of Employment Security, Appellees.
 No. 19491.
 United States Court of Appeals Ninth Circuit.
 Sept. 14, 1965.
 
 Stuart Simke, Green, Simke & Lasher, and Burton Marks, Beverly Hills, Cal., for appellants.
 John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Robt. V. Zener, Attys., Dept. of Justice, Washington, D.C., Manuel Real, U.S. Atty., Los Angeles, Cal., for appellees.
 Before JERTBERG and ELY, Circuit Judges, and POWELL, District Judge.
 JERTBERG, Circuit Judge:
 
 
 1
 This action was brought in the United States District Court for the Southern District of California, Central Division by 181 Mexican nationals (hereinafter 'Aliens') challenging certain administrative determinations made by appellees affecting the eligibility of such aliens to obtain immigrant visas to enter the United States. Also joined as plaintiffs below are 6 agricultural corporations, partnerships, and associations (hereinafter 'Growers') doing business in California, and an attorney, Braude, who specializes in aiding Mexican nationals to immigrate into the United States for employment by California growers.
 
 
 2
 The District Court granted appellees' motion to dismiss the action stating as to both the Aliens and Growers 'that the complaint does not state a claim upon which relief can be granted * * *.' The attorney, Braude, does not appeal. The jurisdiction of the District Court is founded upon 28 U.S.C.A. 2201 (declaratory judgments), and 5 U.S.C.A. 1009 (Administrative Procedure Act). The jurisdiction of this court is based upon 28 U.S.C.A. 1291, as amended, (1951).
 
 
 3
 Under the provisions of Section 212 of the Immigration and Nationality Act (8 U.S.C.A. 1182),[1] certain classes of aliens are ineligible to receive visas and are excluded from admission into the United States.
 
 
 4
 The complaint alleges, in substance, that pursuant to those provisions the Secretary of Labor, by a delegation of his authority through the Bureau of Employment Security to the California Regional Administrator of the Bureau of Employment Security, determined: (1) that notwithstanding a determination to the contrary by the Department of Labor of the State of California, the employment of the aforesaid aliens in the United States 'will adversely affect the wages and working conditions of the workers in the United States similarly employed'; and (2) that one of the grower corporations (an appellant here) was not an 'employer' within the meaning of the Bureau of Employment Security's rules for determining the validity of (a) offers of employment and (b) the possible likelihood that applicants for visas may become 'public charges'.
 
 
 5
 It is further alleged that by these determinations the Aliens are unable to present to an American Consul in Mexico the requisite qualifications properly satisfied so that he may act favorably upon their applications for visas. Appellants seek judicial review of the determinations. Two errors are specified:
 
 
 6
 1. The Federal District Court erred in granting appellees' motion to dismiss on the grounds that the complaint did not state a claim upon which relief can be granted as to the aliens.
 
 
 7
 2. The Federal District Court erred in granting appellees' motion to dismiss on the grounds that the complaint did not state a claim upon which relief can be granted as to the growers.
 
 
 8
 * The aliens first argue that 'they are in the same category as aliens in exclusion cases'. It is argued that judicial review has traditionally been extended to adverse administrative determinations in such cases.
 
 
 9
 However, such has not been the rule. See, generally, Gordon & Rosenfield, Immigration Law and Procedure, 8.2, pp. 809-812, (1964).
 
 
 10
 In Lem Moon Sing v. United States, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082 (1895), it was contended that although immigration officers had authority to exclude aliens from coming into to the United States, if an alien was entitled of right to enter the country and was nevertheless excluded by such officers, the latter exceeded their jurisdiction and the courts might intervene. The court, speaking through Mr. Justice Harlan, said:
 
 
 11
 'That view, if sustained, would bring into the courts every case of an alien claiming the right to come into the United States under some law or treaty, but was prevented from doing so by the executive branch of the government. This would defeat the manifest purpose of congress in committing to subordinate immigration officers and to the secretary of the treasury exclusive authority to determine whether a particular alien seeking admission into this country belongs to the class entitled by some law or treaty to come into the country, or to a class forbidden to enter the United States. Under that interpretation of the act of 1894, the provision that the decision of the appropriate immigration or custom officers should be final, unless reversed on appeal to the secretary of the treasury,[2] would be of no practical value.
 
 
 12
 'The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.'
 
 
 13
 In United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542, 543, 70 S.Ct. 309, 312, 94 L.Ed. 317, (1950), the court pointed out that aliens may not seek admission to this country under any claim of right but that such is a privilege granted by the sovereign United States government. The court, in reiterating the principle adverted to above, said:
 
 
 14
 'When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.
 
 
 15
 'Thus the decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign, such as the Attorney General. The action of the executive officer under such autority is final and conclusive. Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien. Nishimura Ekiu v. United States, 142 U.S. 651, 659-660, 12 S.Ct. 336, 338, 35 L.Ed. 1146; Fong Yue Ting v. United States, 149 U.S. 698, 713-714, 13 S.Ct. 1016, 1022, 37 L.Ed. 905; Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881. Cf. Yamataya v. Fisher, 189 U.S. 86, 101, 23 S.Ct. 611, 614, 47 L.Ed. 721.'
 
 
 16
 For the first time, in Brownell v. Tom We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956) the Supreme Court held that exclusion orders may be challenged, not only by habeas corpus, but also by declaratory judgment action and that the finality provision of the 1952 Act (8 U.S.C.A. 1226(c)) refers only to administrative finality.
 
 
 17
 In 1961 Congress enacted 106(b) of the Immigration and Nationality Act, (8 U.S.C.A. 1105a(b)) which contracted the scope of judicial review. It is as follows:
 
 
 18
 'Limitation of certain aliens to habeas corpus proceedings
 
 
 19
 (b) Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title on comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise.'
 
 
 20
 The passage of this legislation was intended to make hitherto divergent methods of review uniform and to prevent certain dilatory tactics employed by those against whom orders of deportation and exclusion had issued. H.R.Rep.No. 1086, 87th Cong., 1st Sess., (1961), U.S. Code Congressional and Administrative News, 1961, pp. 2966-2977; Foti v. Immigration and Naturalization Service, 375 U.S. 217, 224, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). We think it not without significance that Congress has limited judicial review to those instances where not only is the alien within the borders of this country but also is in detention.
 
 
 21
 Appellant aliens here argue that although they have not sought admission at the borders of this country, that fact is not decisive.
 
 
 22
 We have been unable to discover a case, and appellants assert they are unable to cite one to us, wherein aliens in these circumstances have been granted judicial review of like or similar administrative determinations. In Brownell v. Tom We Shung, supra, while granting the right of review by a declaratory judgment action in an exclusion case, the court added a precautionary note:
 
 
 23
 'We do not suggest, of course, that an alien who has never presented himself at the borders of this Milk Producers of New Jersey v. judgment action by bringing the action from abroad.' Footnote 3, 352 U.S. at p. 184, 77 S.Ct. at p. 255.
 
 
 24
 In Montgomery v. Ffrench, 299 F.2d 730 (8th Cir. 1962), appellants were adopting parents who, by a declaratory judgment action, sought judicial review of an administrative determination denying their petition to classify a nonresident alien child as an 'eligible orphan' although said child had never been within, or at, the borders of the United States. The court said, at p. 735:
 
 
 25
 'The Act (providing for the admission into the United States of alien orphans) established only a privilege, a privilege which could be exercised only with the approval of the Attorney General or his designate. * * * Under these circumstances the courts possess no right or power to question the propriety or reasonableness of the Attorney General's denial of the petition by a declaratory judgment or otherwise.'
 
 
 26
 The citations offered by appellants pertaining to non-immigration cases are commuters, and that the latter are those cases the res was before the court and within its jurisdiction. See, Kukatush Mining Corp. v. Securities and Exchange Commission, 114 U.S.App.D.C. 27, 309 F.2d 647, 649 (1962).
 
 
 27
 In light of the foregoing, we are constrained to hold that no right of judicial review exists on the part of these nonresident resident aliens of determinations made by the executive branch acting pursuant to Congressional directive.
 
 II
 
 28
 The Growers likewise seek judicial review of the same administrative determinations.
 
 
 29
 Section 10 of the Administrative Procedure Act provides, in part:
 
 
 30
 '1009. Judicial review of agency action
 
 
 31
 'Except so far as (1) statutes preclude agency review or (2) agency action is by law committed to agency discretion.
 
 Rights of review
 
 32
 '(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.' 5 U.S.C.A. 1009 (1946).
 
 
 33
 The question presented for our determination is whether or not the growers have, by the determinations complained of, suffered a 'legal wrong' or have been 'adversely affected or aggrieved * * * within the meaning of any relevant statute'.
 
 
 34
 Appellants concede that they have no enforceable right to the admission or exclusion of aliens but argue that they themselves have suffered a 'legal wrong' within the meaning of the Administrative Procedure Act, supra. They argue that the practical effect of the determination will 'force appellant growers to raise their wage scale and change the working conditions' and will prevent them 'from effectively competing with other businessmen in this labor force'.
 
 
 35
 The phrase 'legal wrong' under the Act means the invasion of a legally protected right. Pennsylvania R.R. Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, 294 (1964). Our inquiry, then, must be to determine if appellants have a legally protected right to be free of the effects ascribed to the administrative determinations.
 
 
 36
 Allegations of similar and as serious economic injury have previously been held insufficient to support standing to sue. Perkins v. Lukins Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); United Milk Prodecures of New Jersey v. Benson, 96 U.S.App.D.C. 227, 225 F.2d 527 (1955); Ferrer v. Fronton Exhibition Co., 188 F.2d 954 (5th Cir. 1951); Young Americans for Freedom, Inc. v. Rusk, 205 F.Supp. 603 (D.C.D.C.1962), affirmed, 113 U.S.App.D.C. 6, 303 F.2d 771 (1962).
 
 
 37
 In Texas State AFL-CIO v. Kennedy, 117 U.S.App.D.C. 343, 330 F.2d 217 (1964), a labor union and others sought declaratory and injunctive relief against the Commissioner of the Immigration and Naturalization Service concerning aliens permitted by the Service to commute from their homes in Mexico to established places of employment in the United States. The court there said at pp. 218, 219:
 
 
 38
 'Assuming the truth of the crucial allegations of the complaint brought by plaintiffs-appellants-- namely, that expulsion or exclusion of the alien commuters would result in many jobs becoming available to the individual plaintiffs, or would at least reduce the competition faced by them in seeking employment, that the union is handicapped in its activities by the presence of the alien
 
 
 39
 The question presented for our determination employed in this country only because the Government officials charged with the enforcement of the immigration laws have illegally permitted them to enter and to work here-- this is not enough to give the plaintiffs-appellants standing to sue the defendant officials for declaratory and injunctive relief. Congress has not given them any such standing by express or implied provision of statute-- either in the immigration laws or in any other act. Absent such a congressional grant, mere economic competition made possible by governmental action (even if allegedly illegal) does not give standing to sue in the courts to restrain such action.'
 
 
 40
 In Kansas City Power and Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955), certain private utility companies brought suit under the Declaratory Judgments Act to enjoin federal officers and agencies from carrying out a federally supported power program. It was there alleged that said program was in violation of law and that severe competition would result in economic injury to the companies. The companies based their right to bring the action, in part, on Section 10(a) of the Administrative Procedure Act, (5 U.S.C.A. 1009(a)). The Court reviewed the legislative history of the Act, rejected contentions that the companies had suffered 'legal wrong' or were 'adversely affected or aggrieved' within the meaning of the statute, and ordered the complaint dismissed. See, Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1962); Harrison-Halsted Community Group v. Housing & Home Finance Agency, 310 F.2d 99 (7th Cir. 1962).
 
 
 41
 In our view, appellants have shown neither a legal wrong nor a legal right to be free of the effects they attribute the determinations complained of will have upon their businesses.
 
 
 42
 To support standing to sue under Sec. 10(a) of the Act it is not enough for appellants to show that they have been 'adversely affected or aggrieved'. In addition, there must be a showing of adverse effect or aggrievement 'within the meaning of any relevant statute.' Kansas City Power and Light Co. v. McKay, supra. The assertion by appellants in their closing brief that the administrative determinations constitute 'a violation of the due process and equal protection clauses of the United States Constitution' is not such a showing. No allegation of state action (14th Amendment) is made in the complaint nor is it alleged that appellants have been 'deprived of life, liberty, or property' (5th Amendment). Indeed, on the basis of the undisputed facts here none could be soundly made.
 
 
 43
 We believe appellants' single authority, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO v. Rogers, 186 F.Supp. 114 (D.C.D.C.1960) to be unpersuasive as did the District of Columbia Circuit in Texas State AFL-CIO v. Kennedy, supra, footnote 3.
 
 
 44
 We therefore conclude that the growers' allegations are insufficient to show that they have suffered a 'legal wrong' or that they have been 'adversely affected or aggrieved * * * within the meaning of any relevant statute', and that as a necessary result, they are without standing to sue.
 
 
 45
 A further contention of the growers, not considered in the foregoing opinion, should be mentioned. This contention relates only to those growers who were determined by appellees not to be 'growers for the purpose of submitting a valid 'offer' of employment.'[3] It appears that the Administrator of the Bureau of Employment Security promulgated a rule to determine who will be considered as employers for the purpose of submitting a valid 'offer of employment'. The rule provides in part that one submitting the 'offer of employment' must be the actual employer of an alien, that is, the one with whom the contract of employment will exist, and who will supervise the alien, hire, fire and pay his salary. It is contended that the appellees had no authority to define 'employer' and that if they had such authority the definition used is arbitrary and capricious. In the foregoing opinion we have not passed in any way upon the validity of the contentions made with respect to such class of growers for the reason that even if appellees had determined that such class of employers were qualified as 'growers' they would have been entitled to no relief under the views expressed in the foregoing opinion.
 
 
 46
 Affirmed.
 
 
 
 [1]
 1182. Excludable classes of aliens; non-applicability to certain aliens; waiver of requirements; parole of aliens; report to Congress; suspension of entry by President
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * *
 (14) Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, if the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) sufficient workers in the United States who are able, willing, and qualified are available at the time (of application for a visa and for admission to the United States) and place (to which the alien is destined) to perform such skilled or unskilled labor, or (B) the employment of such aliens will adversely affect the wages and working conditions of the workers in the United States similarly employed. * * * (15) Aliens who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission, are likely at any time to become public charges.
 
 
 [2]
 The 1952 Act contains a similar provision. 8 U.S.C.A. 1226(c)
 
 
 [3]
 So far as we can determine such contention relates only to San Gabriel Valley Labor Association, Oxnard Plains Growers' Association, and LaVerne Cooperative Citrus Association, each of which is alleged to be a non-profit corporation