KINGMAN REEF ATOLL INVEST-
MENTS, L.L.C., a Hawaii limited lia-
bility company; Kingman Reef Atoll
Development, L.L.C., a Hawaii limited
liability company; Kingman Reef En-
terprises, L.L.C., a Washington limit-
ed liability company; and Palmyra
Pacific Seafoods, L.L.C., a Washing-
ton limited liability company, Plain-
tiffs,

v.

The UNITED STATES DEPARTMENT
OF THE INTERIOR; The Honorable
Gale Norton, in her official capacity
as Secretary of the Interior; The Unit-
ed States Fish & Wildlife Service;
Marshall Jones, in his official capaci-
ty as Acting Director of Fish & Wild-
life Service; Daniel Ashe, in his offi-
cial capacity as Chief of National
Wildlife Refuge System, Fish & Wild-
life Service, Defendants.

CIVIL NO. 01–00122 SOM–LEK.

United States District Court,
D. Hawai'i.

March 22, 2002.

John J. Houlihan, Jr., Richard A. DuBey, Short Cressman & Burgess, PLLC, Seattle, WA, Christian P. Porter (present, but did not argue), Brooks Tom Porter & Quitiquit, Honolulu, HI, for Plaintiffs.

Thomas A. Helper, Asst. U.S. Atty., Office of the U.S. Atty., Honolulu, HI, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

Kingman Reef is a small island located approximately 900 miles south of Hawaii. In January 2001, the Department of the Interior signed Order No. 3223 establishing a National Wildlife Refuge ("Refuge") at Kingman Reef. Plaintiffs, contending that Order No. 3223 violates the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act (the "APA"), seek declaratory and injunctive relief prohibiting its enforcement.

Two motions are before the court. Defendants (collectively the "government") move to dismiss Plaintiffs' claims or, in the alternative, move for summary judgment, on the grounds that (1) Plaintiffs lack standing, (2) the FWS fully complied with NEPA, and (3) Plaintiffs are asserting ownership over Kingman Reef, which the court lacks subject matter jurisdiction to consider. Plaintiffs move for summary judgment on the grounds that the government's designation of Kingman Reef as a Refuge violated NEPA and the APA, exceeded the government's statutory authority, and violated Plaintiffs' procedural due process rights. Because Plaintiffs lack standing to pursue their claims, the government's motion to dismiss is GRANTED, and Plaintiffs' motion for summary judgment is DENIED as moot.

## II. *BACKGROUND FACTS.*

 Kingman Reef was first discovered in 1798 by Captain Edmund Fanning, and rediscovered by Captain W.E. Kingman in 1853. Sheppard Decl. Exhs. E, F.[1] Kingman Reef was claimed in 1860 by the U.S. Guano Company under the Guano Islands Act. Sheppard Decl. Exhs. F, G, P. In 1922, Lorrin A. Thurston annexed Kingman Reef in the name of the United States for his employer, the Island of Palmyra Copra Company. Compl. ¶ 22; Sheppard Decl. Exhs. F, J, P. The Island of Palmyra Copra Company was apparently run by the Fullard Leo family (the "Fullard–Leos"). Compl. 22; Sheppard Decl. Ex. H. The Island of Palmyra Copra Company wrote a letter to the Secretary of State on July 15, 1922, advising the Secretary of its annexation. Sheppard Decl. Ex. J. The State Department acknowledged receipt of that letter in September 1922. Sheppard Decl. Ex. K. In 1933, the State Department concluded that the United States had no valid claim to Kingman Reef arising under the Guano Islands Act. Sheppard Decl. Exhs. F, P. Nevertheless, in 1934, President Franklin D. Roosevelt signed an Executive Order placing Kingman Reef under the control and jurisdiction of the United States Navy. Sheppard Decl. Exhs. E, F.

In 1937 and 1938, the Fullard–Leos wrote letters to Congress and the Navy in which they seemed to acknowledge that Kingman Reef was owned by the United States. They requested compensation for the cost of having annexed Kingman Reef. Sheppard Decl. Exhs. L, M. In 1938, the Navy stated that the Fullard Leos had no interest in Kingman Reef, as Kingman Reef had been claimed as a bonded guano island by the U.S. Guano Company in 1860 and was under the control and jurisdiction of the Navy. Sheppard Decl. Ex. O.

---

1. Plaintiffs challenge the admissibility of documents that are not part of the Administrative Record. Their challenge is without merit. On a factual Rule 12(b)(1) attack, the court may look beyond the complaint to matters of public record without converting the motion into one for summary judgment. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (citations omitted).

Kingman Reef remained under the Navy's jurisdiction from 1934 until August 2000. A.R. Ex. 33; Sheppard Decl. Ex. Q. In August 2000, Kingman Reef was determined to be "excess" to Department of Defense requirements, and administrative jurisdiction of Kingman Reef was transferred to the Department of the Interior (the "DOI"). *Id.* The government claims that Kingman Reef is owned by the United States, while Plaintiffs claim that it is owned by Plaintiff Kingman Reef Atoll Investments, L.L.C. ("KRAI"). Plaintiffs claim that Kingman Reef was never purchased, or taken by eminent domain, from the Fullard–Leos. A.R. Ex. 33. Plaintiffs assert that the Fullard Leos owned and held title to Kingman Reef from 1922 until November 17, 2000, when the Fullard Leos transferred title to KRAI. Compl. ¶ 5. Plaintiffs say that the Navy and the DOI have administered Kingman Reef in a manner consistent with Fullard Leo ownership of Kingman Reef. A.R. Ex. 34.

On December 11, 2000, Defendant United States Fish & Wildlife Service (the "FWS") issued a draft Environmental Assessment ("EA") for a proposal to establish a Refuge at Kingman Reef. Sheppard Decl. Ex. D. The draft EA evaluated the environmental effects of not establishing a Refuge (the No–Action alternative) and of establishing a Refuge. *Id.* The FWS invited public review and comments for thirty days, and received comments both supporting and opposing the establishment of a Refuge. Sheppard Decl. Ex. B. On January 17, 2001, the FWS issued a Finding of No Significant Impact ("FONSI"), determining that the establishment of a Refuge at Kingman Reef was "not a major federal action that will significantly affect

the quality of the human environment." *Id.* Accordingly, the FWS determined that it was not required to prepare an Environmental Impact Statement ("EIS"). *Id.* In its FONSI, the FWS noted that a private entity claimed ownership of Kingman Reef, but determined that the claim was not legally valid. *Id.* On January 18, 2001, the Secretary of the Interior signed Order No. 3223 establishing the Kingman Reef National Wildlife Refuge, to be administered by the Director of the FWS. Sheppard Decl. Ex. A. The Refuge was established "to protect the natural character, including the fish, wildlife, plants, coral reef communities, and other resources of Kingman Reef and all reefs surrounding Kingman Reef." *Id.*

On February 16, 2001, Plaintiffs sued for injunctive relief, seeking a declaration that the government's FONSI and Order No. 3223 are inadequate and in violation of NEPA and the APA. Plaintiffs seek to prohibit the government from further implementation of Order No. 3223. Plaintiffs also seek to vacate Order No. 3223, to have the government perform an EIS, and to have the government otherwise comply with NEPA and the APA. On December 18, 2001, the government moved to dismiss or, in the alternative, for summary judgment. Plaintiffs filed their motion for summary judgment on January 7, 2002.

## III. *STANDARD OF REVIEW.*

 The government moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[2] The government's attack on Plaintiffs' standing is an attack on the court's subject matter jurisdiction. *See White v. Lee,* 227 F.3d 1214, 1242 (9th

---

**2.** The government also moves to dismiss under Rule 12(b)(6). However, challenges to standing implicate the court's subject matter jurisdiction and are therefore considered under Rule 12(b)(1), not 12(b)(6). *See White,* 227 F.3d at 1242. In the alternative, the

government moves for summary judgment. Plaintiffs have also moved for summary judgment. Because the court decides this case based on threshold jurisdictional issues, the court need not address summary judgment matters.

Cir.2000)(stating that standing pertains to a federal court's subject matter jurisdiction). Plaintiffs have the burden of establishing standing. *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction"). A Rule 12(b)(1) motion to dismiss for lack of standing may attack the court's subject matter jurisdiction either facially or factually. *See White*, 227 F.3d at 1242. Here, the government contends that the noneconomic injuries Plaintiffs allege in their complaint do not exist in fact. When, as here, a Rule 12(b)(1) attack is factual, the court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *Id.* The court also need not presume the truthfulness of a plaintiff's allegations.[3] *Id.*

## IV. ANALYSIS.

### A. *Plaintiffs Must Satisfy the "Zone of Interests" Test.*

■ The government argues that Plaintiffs lack standing to bring their claims. To meet the "irreducible constitutional minimum" for standing under Article III, a plaintiff must show (1) that it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Cantrell v. City of*

*Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001).

■ In addition to these constitutional requirements, in a challenge to administrative action, a plaintiff must establish prudential standing. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Presidio Golf Club v. National Park Serv.*, 155 F.3d 1153, 1157 (9th Cir.1998). The APA grants standing to two classes of plaintiffs: (1) those "suffering legal wrong because of agency action," and (2) those "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

■ As to the second class of plaintiffs, the Supreme Court has clearly stated that, to be adversely affected or aggrieved within the meaning of a statute, "the plaintiff must establish that the injury he complains of ... falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)(citing *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 396–97, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)). Plaintiffs contend that this "zone of interests" test is inapplicable to their claim that they have suffered a direct "legal wrong because of agency action." This court disagrees.

Ninth Circuit precedent is not entirely clear on this issue. Plaintiffs argue that the Ninth Circuit has at least suggested that the "zone of interests" test may not

---

3. Plaintiffs propose that, in evaluating the government's motion to dismiss for lack of standing, the court accept as true all material allegations of the complaint and construe the complaint in favor of Plaintiffs. *See Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir.2000).

This is indeed the correct standard for evaluating a facial attack under Rule 12(b)(1). *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). However, the government's attack on standing is factual; the standard for a factual Rule 12(b)(1) attack applies.

apply to plaintiffs who come under the "legal wrong" prong of § 702. In *Church-ill County v. Babbitt,* 150 F.3d 1072, 1078 (9th Cir.), *amended on other grounds,* 158 F.3d 491 (9th Cir.1998), the court, discussing the requirements for standing under § 702, wrote:

> "The plaintiff must establish (1) that there has been final agency action adversely affecting the plaintiff, and (2) that, as a result, it suffers legal wrong or that its injury falls within the 'zone of interests' of the statutory provision the plaintiff claims was violated." [4]

*Accord Hall v. Norton,* 266 F.3d 969, 975 n. 5 (9th Cir.2001); *National Collegiate Athletic Ass'n v. Califano,* 622 F.2d 1382, 1385 (10th Cir.1980). In *Nevada Land Action Association v. United States Forest Service,* 8 F.3d 713 (9th Cir.1993), the Ninth Circuit said only, "A zone of interests test is not necessarily inapplicable to plaintiffs who claim standing under the 'legal wrong' prong of APA § 702." *Id.* at 716 n. 1.

The Ninth Circuit has sometimes applied the "zone of interests" test generally, without differentiating between claimants alleging a "legal wrong" and claimants alleging they were "adversely affected or aggrieved." *See, e.g., Cantrell,* 241 F.3d at 679 ("a plaintiff bringing suit under the [APA] for a violation of NEPA must show that his alleged injury falls within the 'zone of interests' that NEPA was designed to protect"); *Presidio Golf Club,* 155 F.3d at 1158 (stating that § 702 requires that the interest sought to be protected be arguably within the zone of interests to be protected or regulated by the statute); *Douglas County v. Babbitt,* 48 F.3d 1495,

1498 (9th Cir.1995)("a plaintiff challenging a statutory provision under the Administrative Procedure Act ... must show that the injury he or she has suffered falls within the 'zone of interests' that the statute was designed to protect"). Those cases may stand for the proposition that all plaintiffs suing under § 702 must satisfy the "zone of interests" test, regardless of which prong they come under.

The Supreme Court's language in *Air Courier Conference of America v. American Postal Workers Union AFL–CIO,* 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991), supports the proposition that the "zone of interests" applies to all § 702 plaintiffs. There, the Court wrote:

> To establish standing to sue under the APA, respondents must establish that they have suffered a legal wrong because of the challenged agency action, or are adversely affected or "aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Once they have shown that they are adversely affected, i.e., have suffered an "injury in fact," the Unions must show that they are within the zone of interests sought to be protected through the PES.

*Id.* at 523, 111 S.Ct. 913 (internal citation omitted). This proposition finds further support in one of the Court's major cases on standing. In *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Court wrote that the question of standing "concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within

---

**4.** The words "its injury falls within the 'zone of interests'" could arguably be read as just another way of saying "it suffers legal wrong." That is, the word "or" may simply connect words in apposition rather than in contradiction, in much the same way one might use the word "or" in saying "the defendant, or the movant, challenges this court's jurisdiction." Plaintiffs assume that the Ninth Circuit's use of "or" indicated contrasting alternatives, but "or" is not confined to such use.

the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See also Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. 752 (citing *Data Processing*, 397 U.S. at 153, 90 S.Ct. 827)(one requirement for prudential standing is that a plaintiff's complaint fall within the zone of interests to be protected by the relevant statute or constitutional guarantee); *Preston v. Heckler*, 734 F.2d 1359, 1364 (9th Cir.1984) (discussing *Data Processing* ).

▇▇▇▇ In sum, the court is unaware of any Ninth Circuit case explicitly holding that the "zone of interests" test is inapplicable to those claiming a "legal wrong" under § 702, while several Ninth Circuit and Supreme Court cases presume or suggest that it does apply. The "zone of interests" test appears to be a fundamental requirement of prudential standing. The court declines to create new law in the Ninth Circuit by holding that the "zone of interests" test does not apply to those who allege a "legal wrong." [5] For Plaintiffs to have standing under § 702 under either prong, they must satisfy the "zone of interests" test.

B. *Plaintiffs' Interests Fall Outside the "Zone of Interests" Protected by NEPA.*

▇▇▇ In applying the "zone of interests" test, the court looks to NEPA's relevant stated purposes, which are:

To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation.

42 U.S.C. § 4321. Plaintiffs' interests fall outside the "zone of interests" that NEPA was designed to protect if (1) Plaintiffs' interests are inconsistent with the purposes of NEPA, and (2) Plaintiffs' interests are so inconsistent that it would be unreasonable to assume that Congress intended to permit the suit. *See Douglas County*, 48 F.3d at 1500.

▇▇▇ It is undisputed that Plaintiffs have economic interests in Kingman Reef. These economic interests include commercial fishing, the economic development of Kingman Reef, and other unspecified business interests. *See* Compl. ¶¶ 5–8, 35. However, to have standing, Plaintiffs must assert more than just economic injuries. *See Nevada Land Action Ass'n*, 8 F.3d at 716.

Plaintiffs assert that they will also suffer environmental and ownership injuries. The court is not persuaded. Plaintiffs are limited liability corporations. There is no evidence that Plaintiffs have any environ-

---

**5.** Even if Plaintiffs are not required to satisfy the "zone of interests" test if they allege a "legal wrong," they do not have standing because their economic injuries do not qualify as a "legal wrong." The phrase "legal wrong" under the APA means the invasion of a legally protected right. *Braude v. Wirtz*, 350 F.2d 702, 707 (9th Cir.1965). As explained below, the court determines that Plaintiffs have alleged only economic injuries. Therefore, the inquiry is whether Plaintiffs have a legally protected right to be free of those injuries. *See id.* A legal right may be a property interest, an interest arising out of a

contract, an interest in being protected against tortious invasion, or an interest founded on a statute that confers a privilege. *Tennessee Elec. Power Co. v. Tennessee Valley Auth.*, 306 U.S. 118, 137, 59 S.Ct. 366, 83 L.Ed. 543 (1939). Plaintiffs have not shown that they have any right, whether founded in property, contract, tort, or a statute, to be free of their alleged economic injuries. Moreover, allegations of economic injury have often been held insufficient to support standing under a "legal wrong" analysis. *See Braude*, 350 F.2d at 707.

mental or conservation interest in Kingman Reef, or that preserving the environment is part of their mission. Plaintiffs submitted numerous affidavits asserting that the Fullard Leo family has an environmental interest in preserving and protecting the ecology of Kingman Reef. *See* Aff. of Ainsley Fullard–Leo ¶¶ 11–16; Aff. of Dudley Fullard–Leo ¶ 11–16; Aff. of Frank Sorba ¶¶ 4, 7; Aff. of Peter Savio ¶¶ 9, 10. The evidence indicates only that the Fullard–Leos, individually rather than as members of the Plaintiff entities, may have environmental interests in Kingman Reef. As the Fullard Leos are not parties to this case, their individual interests are irrelevant for purposes of this motion. While the court recognizes that an entity must act through its members, it does not follow that a member's interests are necessarily the entity's interests. None of the affidavits indicates that any of the Plaintiff entities has an environmental interest, and the court is aware of no evidence indicating that such an interest exists.[6]

In fact, the descriptions of the Plaintiff entities in the comments submitted by Plaintiffs and the Fullard Leos regarding the proposal to establish a Refuge refer only to economic interests. For example, the comments say "[KRAI] was established by the [Fullard Leos] to develop the economic potential of Kingman Reef." A.R. Ex. 18. The other Plaintiff entities are described as having interests in commercial fishing; there is no mention of any environmental interest. *See id.*

Even if Plaintiffs do have an environmental or conservation interest in Kingman Reef, they make no showing that such an interest will be injured. Plaintiffs assert that the designation of Kingman Reef as a Refuge "does nothing to protect the natural resources of Kingman Reef." Pls.' Joint Mem. Opp. Defs.' Mot. Dismiss or Summ. J. at 22. Aside from being unsupported by any evidence, this assertion does not amount to an allegation that any natural resource will be injured. Plainly lacking is any showing that the establishment of a Refuge at Kingman Reef will cause environmental harm that would be avoided by not establishing a Refuge.[7] Indeed, the purpose of establishing the Refuge is "to protect the natural character, including the fish, wildlife, plants, coral reef communities, and other resources of Kingman Reef." Sheppard Decl. Ex. A.

Nor is it clear that Plaintiffs have any ownership interest in Kingman Reef. Whether KRAI owns Kingman Reef is in dispute. This court is in no position to adjudicate ownership, and Plaintiffs admit that they do not seek a determination of title in this action.[8] Even if KRAI does have an ownership interest in Kingman Reef, that interest does not encompass an environmental interest or any other interest protected by NEPA.

Plaintiffs contend that their ownership interest encompasses noneconomic rights of ownership, such as use, possession, and access. However, it appears that Plaintiffs

---

**6.** At the hearing, Plaintiffs cited A.R. Ex. 18 as evidence that the Plaintiff entities' interests are co-extensive with the Fullard–Leos'. Ex. 18 is the response of the Fullard Leos and the Plaintiff entities to the FWS request for public comments on the establishment of a Refuge at Kingman Reef. It indicates only that the Plaintiff entities may share the same interests as the Fullard Leos in the economic development of Kingman Reef. It does not indicate that the Plaintiff entities share any of the Fullard Leos' environmental interests.

**7.** At the hearing, Plaintiffs said that the Coast Guard admits to lacking the resources necessary to patrol Kingman Reef as a Refuge. Even if this is true, Plaintiffs have not shown that this will cause environmental harm.

**8.** Plaintiffs have filed *Kingman Reef Atoll Investments, L.L.C., et al. v. United States,* No. 02–140L, in the Court of Federal Claims, to determine the ultimate ownership of Kingman Reef.

have interests in using, possessing, and accessing Kingman Reef only insofar as such use, possession, or access enables them to pursue their economic interests. As explained above, there is no showing that Plaintiffs, separate and apart from the Fullard Leos, use, possess, or have access to Kingman Reef to further any environmental or conservation interest. Any injury Plaintiffs may suffer to their alleged ownership interest is purely economic in nature.

Plaintiffs' economic interests are unrelated to any of NEPA's stated purposes. Congress did not intend for NEPA to be used as a vehicle for protecting purely economic interests; nothing in NEPA's stated purpose suggests that it was intended to protect commercial interests at all. Therefore, Plaintiffs' economic interests are inconsistent with the purposes of NEPA. While the Fish and Wildlife Act, 16 U.S.C. § 742a, *et seq.*, recognizes the importance of the reasoned use of fisheries, the proper inquiry is into NEPA's "zone of interests," not the Fish and Wildlife Act's "zone of interests."

 "The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions. Therefore a plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA." *Nevada Land Action Ass'n,* 8 F.3d at 716; *accord Presidio*

*Golf Club,* 155 F.3d at 1157–58 ("Purely economic interests do not fall within the zone of interests to be protected by NEPA"). Because Plaintiffs assert only economic injuries, they lack prudential standing to challenge the government's action under NEPA.[9]

 Plaintiffs argue that, even if they lack prudential standing, they have procedural standing. Procedural standing is based on a plaintiff's procedural injury. A plaintiff claiming procedural standing must be seeking enforcement of a procedural requirement, the disregard of which could impair the plaintiff's concrete interest. *Churchill County,* 150 F.3d at 1077. Plaintiffs claim that they have procedural standing because they each participated in the allegedly flawed process that led to Kingman Reef's designation as a Refuge.

 To establish procedural standing, Plaintiffs must show that (1) they have been accorded a procedural right to protect their concrete interests, and (2) they have some threatened concrete interest that is the ultimate basis of their standing. *See Douglas County,* 48 F.3d at 1500. In addition, Plaintiffs must show that their interest is within the "zone of interests" that NEPA was designed to protect. *See id.* Because Plaintiffs fail the "zone of interests" test, as explained above, Plaintiffs lack procedural standing. The court

---

9. Plaintiffs cite *Sierra Club v. Morton,* 405 U.S. 727, 733–34, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), for the proposition that economic injuries alone are sufficient to confer standing under NEPA. Plaintiffs have mischaracterized that holding. In *Sierra Club,* the Supreme Court recognized that, in previous cases, economic injuries were sufficient to lay the basis for standing. *See id.* and *id.* at 734 n. 6, 92 S.Ct. 1361. However, those cases did not involve application of NEPA. Instead, those cases involved the application of laws that protected economic interests. *See Data Processing,* 397 U.S. 150, 90 S.Ct. 827 (Bank

Service Corporation Act and National Bank Act); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)(Food and Agriculture Act); *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968)(Tennessee Valley Authority Act); *City of Chicago v. Atchison, T. & S.F. Ry. Co.,* 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958)(Interstate Commerce Act); *F.C.C. v. Sanders Bros. Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940)(Communications Act). Plaintiffs cite no case indicating that economic injuries alone are sufficient to confer standing under NEPA.

need not consider the other elements of the test for procedural standing.

Because Plaintiffs lack standing to bring their claims, the court is without subject matter jurisdiction. Accordingly, Plaintiffs' claims are dismissed.

## V. *CONCLUSION.*

For the foregoing reasons, the court grants Defendants' motion to dismiss. In light of this dismissal, the court denies Defendants' alternative motion for summary judgment and Plaintiffs' motion for summary judgment as moot.

IT IS SO ORDERED.